188 N.J. Super. 620 (1983)
458 A.2d 146
ANTONIO GONCALVEZ, AS GUARDIAN AD LITEM FOR RUI A. GONCALVEZ, ANTONIO GONCALVEZ AND MARIA GONCALVEZ, INDIVIDUALLY AND JOINTLY, PLAINTIFF-APPELLANT,
v.
ANTHONY PATUTO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1982.
Decided March 11, 1983.
*622 Before Judges MICHELS, PRESSLER and TRAUTWEIN.
Benjamin A. Stanziale argued the cause for appellant (Donna M. Conoshenti on the brief).
Michael F. O'Gara argued the cause for respondent (Donald W. Murray, attorney and on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
*623 This is an appeal from a summary judgment dismissing the complaint brought on behalf of an infant plaintiff seeking recovery for emotional injury sustained by him as a result of having witnessed his brother's death in an automobile-bicycle accident. The legal issues here projected involve the retrospectivity of Portee v. Jaffee, 84 N.J. 88 (1980), which recognized the cause of action on which this complaint was based, as well as questions relating to the applicability in the circumstances here of various preclusionary doctrines which might bar this action.
Resolution of these issues requires some extended background exposition, both legal and factual. Insofar as we can reconstruct from the regrettably sparse record before us, Mario A. Goncalvez, while riding his bicycle, was struck by an automobile being driven by defendant Anthony Patuto. Mario died as a result of the injuries he then sustained. The accident was witnessed both by Mario's father, plaintiff Antonio Goncalvez, and by his brother Rui, on whose behalf this action was brought. The accident occurred on August 18, 1976. The brothers were then apparently eight and ten years old although we cannot ascertain from this record either their precise ages or which was the elder.
Almost two years after the accident, on March 13, 1978, the first action generated by the accident was commenced. Although the pleadings therein are not included in this record, it appears to have been a wrongful death and survival action prosecuted by the father Antonio Goncalvez, as administrator ad prosequendum of Mario and as administrator of the estate of Mario. It further appears that a per quod claim was asserted in that action by both of Mario's parents, Antonio and Maria Goncalvez, who are named as individual plaintiffs in the caption. The wrongful death action was settled in November 1979 for a total recovery of $15,000 and a release given to defendant. The named releasors were Antonio Goncalvez as administrator ad prosequendum and administrator, and Antonio and Maria Goncalvez *624 individually. Both parents signed the release in those respective capacities. There does not appear to have been any allocation of the total settlement amount as among the wrongful death action, the survival action and the per quod claim of the parents.[1]
Finally, it appears that because of the potential interest of Rui, the minor brother in the wrongful death action proceeds, a guardian ad litem was appointed to review the settlement and to report to the court on Rui's interest therein.[2] Although the report of the guardian ad litem appears to suggest that the entire settlement may have been allocated to the wrongful death claim, nevertheless there remains a question as to whether any of it was allocated to the survival action.[3] The distinction is critical in terms of Rui's entitlement to a share of the proceeds. Thus, pursuant to N.J.S.A. 2A:31-4 and 5, Rui would have been entitled to a share of the wrongful death recovery only if he were a dependent intestate taker or, if there were no dependents among the intestate takers, only to the extent determined by the court to be fair and equitable. See Jurman v. Samuel Braen, Inc., 47 N.J. 586, 601-602 (1966); State v. Gosnell, 106 N.J. Super. 279 (App.Div. 1969). He was reported by the guardian not to have been a dependent and that conclusion was not *625 disputed. In the context of a fair and equitable allocation of the wrongful death action proceeds, we further note that the pecuniary losses, if any, sustained by Mario's family were suffered primarily by his parents. Hence the likelihood of Rui's entitlement to a share of those proceeds was remote. In respect, however, of an estate of Mario created by a fund representing the proceeds of a survival action, intestate taking thereof is unrelated to dependency or pecuniary loss. Thus, pursuant to former N.J.S.A. 3A:4-4, then applicable, Rui would have been entitled to share therein equally with his parents.[4] In any event, the guardian further reported that Rui had suffered a severe psychiatric trauma as a result both of the death of his brother and of his having witnessed it, and that he required "psychiatric attention and psychotherapy treatment." He also reported that the father had volunteered to have the entire settlement fund placed in trust for his surviving son so that these needs could be fulfilled. There is nothing in this record to suggest other than that the guardian's report was accepted by the court and the settlement approved on the basis thereof.
After the conclusion of this first action, the New Jersey Supreme Court, on July 29, 1980, issued its opinion in Portee v. Jaffee, 84 N.J. 88 which clarified the law governing recovery for the negligent infliction of emotional distress. Making clear that a claimant's right to seek such a recovery was not dependent upon his also having sustained a physical impact or being in imminent risk of physical impact, the court identified the four elements of the emotional-injury cause of action, to wit,
(1) The death or a serious physical injury of another caused by defendant's negligence; (2) a marital or intimate familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress. [at 101]
Significantly, the court did not view the principles it enunciated in Portee v. Jaffee as constituting either a departure from or *626 radical change of then existing doctrine but rather as a natural evolutionary progression in the growth of the common law. It was thus the court's observation that
Since Falzone [Falzone v. Busch, 45 N.J. 559 (1965)] this Court's decisions have shown no hostility to the imposition of liability for negligently causing mental or emotional distress even without an attendant risk of physical harm. [84 N.J. at 95]
Some four months after Portee was decided this action was instituted by Antonio Goncalvez, as guardian ad litem for Rui and Antonio and Maria Goncalvez, individually. The first count of the complaint sought damages for Rui's emotional injury resulting from his observation of Mario's fatal accident, the second count sought damages for the father, Antonio, for his emotional injury resulting therefrom, and the third count sought per quod damages for the parents resulting from Rui's emotional injury. Defendant moved for summary judgment dismissing the complaint. He contended first that Portee, upon which the complaint was conceptually founded, should not be retrospectively applied. Alternatively, he contended that the cause of action was barred by the release given in the first action, that Rui's claim was not cognizable because the fraternal relationship does not meet the Portee requirement of an "intimate familial relationship," and that the father's claim was not cognizable because it was barred by the statute of limitations. The trial judge, concluding that Portee should only be prospectively applied, granted the motion. We reverse as to the first and third counts seeking recovery for Rui's emotional injury and his parents' per quod claim derivative therefrom.
We hold first that Portee v. Jaffee is clearly entitled to retrospective application. It is well settled law in this jurisdiction that, absent a clear demonstration of public policy considerations to the contrary, the overruling of a judicial decision is retrospective in nature. Mirza v. Filmore Corp., 92 N.J. 390, 396-397 (1983); Darrow v. Hanover Tp., 58 N.J. 410, 413 (1971); Cogliati v. Ecco High Frequency Corp., 181 N.J. Super. 579, 582 (App.Div. 1981), aff'd. 92 N.J. 402 (1983). This principle is, a *627 fortiori, applicable to decisions, such as Portee, which clarify and extend settled legal doctrine.
As categorized by Mirza, supra, the typical countervailing circumstances militating against retrospectivity are justifiable reliance by parties and the community as a whole on prior doctrine, a potentially adverse effect on the administration of justice and a determination that the purpose of the new doctrine will not be advanced by retroactive application. Particularly in view of the court's own perception, expressed in Portee, that that decision was foreshadowed, if not indeed rendered inevitable, by the development to that point of the law on the subject of emotional distress, we are satisfied that the factor of substantial reliance is not here significantly or critically involved. Nor do we perceive any impediment to retrospectivity in the other factors identified by Mirza. The special factors relied on by Willis v. Conservation & Ec. Develop. Dep't, 55 N.J. 534, 541 (1970), and Darrow v. Hanover Tp., supra, 58 N.J. at 414-416, which denied retrospectivity to the overruling of sovereign immunity and interspousal immunity, respectively, because of administrative implications and widespread reliance are simply not present here. There is thus no reason why the ordinary and presumptive rule of retrospectivity should not apply to actions for emotional injury as it has been applied, for example, to the liability of commercial landlords for abutting sidewalk conditions, to the abolition of charitable immunity and to the payment of prejudgment interest. See, respectively, Mirza v. Filmore Corp., supra; Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958), and Busik v. Levine, 63 N.J. 351, 360-361 (1973) app. dism. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973).
We consider next the effect of the release in the first action on the maintainability of this action.[5] There are several *628 reasons why that release can be accorded no preclusionary impact here in respect of Rui's claim. Fundamental is the appreciation that Rui was not a party to the first action, had no direct interest therein and was not a signatory to the release. Furthermore, his cause of action for his own injury, the emotional sequelae of witnessing his brother's death, was not an included cause of action in the first case. As we have already indicated, the first action involved a wrongful death claim, a survival claim and a parents' per quod claim in connection with the survival action. All of these claims arose out of the alleged negligent injury and resulting death of Mario. The wrongful death claim, therefore, was in essence that of Mario's dependents, of whom his brother Rui was not one. The survival action was Mario's own claim, albeit prosecuted by his estate. Clearly, from the point of view of party status, Rui's interest as an intestate heir of Mario's is coincidental and collateral and could not render him either an actual party or a real party in interest in the survival action in any preclusionary sense.[6] Nor was Rui a party in respect of his parents' per quod claim arising out of Mario's injury and death.
Even more significant is the fact that Rui's emotional injury claim constitutes his own independent cause of action. Unlike all the claims made in the first action resulting from Mario's injury and death, Rui's emotional injury claim is not derivative therefrom in any practical or technical sense. Its status is precisely the same as if he had sustained his own physical injury in the bicycle-automobile accident but no suit on his behalf was simultaneously instituted. Its subsequent maintainability would *629 only be dependent upon its own timeliness, and the statute of limitations does not begin to run on a minor's claim until he has reached his majority.[7] See N.J.S.A. 2A:14-21. Rui's own cause of action remains, therefore, viable.
Nor is that cause of action barred by the release in the first action. It is axiomatic that a release of a defendant will release him only in respect of those claims by those parties as are actually or intended to be encompassed thereby. See Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 559 (1980). And see 2 Restatement, Contracts 2d, § 284, comment c, at 392-393 (1981). Rui's claim was not encompassed within the subject matter scope of the release. Nor was he, by representation or otherwise, a party to the release. The ineluctable conclusion, therefore, is that his own independent cause of action survived the release.
We are further persuaded that since Rui's independent cause of action survived the release, the per quod action of his parents deriving therefrom also survived. Clearly, they signed the release only in the father's representational capacity as administrator and administrator ad prosequendum of Mario's estate, and in respect of their own derivative claims resulting from Mario's injury and death. They did not sign in a representational capacity in respect of Rui's own injury claim or in respect of their derivative claims resulting from Rui's injury. As a conceptual and procedural imperative, the per quod claim is not properly made until assertion of the cause of action from which it derives, and, as a proper procedural matter, that is the *630 time when it should be made. Cf. R. 4:28-3(b) so requiring in respect of interspousal per quod claims. Thus, assertion of the per quod claim prior to the institution of Rui's cause of action would have been premature. That no such claim was contemplated by the release is clear.
Finally, we are satisfied that the present per quod claim is not barred by any applicable statute of limitations. N.J.S.A. 2A:14-2.1 specifically preserves the parental per quod claim during the entire period of viability of the child's claim and until the child's claim is brought.
We do, however, agree with defendant that the father's cause of action for emotional distress resulting from the witnessing of his son's death is precluded by the statute of limitations. N.J.S.A. 2A:14-2. He sustained that injury in 1976. The right of action was thus barred long before the 1980 commencement of this suit.
We need not dwell over defendant's final argument regarding the qualification of the fraternal relationship for a cause of action as defined by Portee. The intimacy of any family relationship giving rights to such a cause of action is ultimately a matter of proof. We are nevertheless convinced that the fraternal relationship presumptively qualifies. The strength, interdependence and unique emotional commitments of that relationship have been recognized at least as far back as the Book of Genesis.
The summary judgment appealed from is affirmed insofar as it dismisses the second count of the complaint. It is reversed insofar as it dismisses the first and third counts of the complaint whereby the infant brother of the decedent asserts a cause of action for emotional injury and his parents assert a per quod claim derivative therefrom. Those counts of the complaint are remanded to the trial court for further proceedings.
NOTES
[1] We infer that these were the elements of the complaint by reason of the plaintiff-status of Antonio as administrator ad prosequendum (appropriate only to the wrongful death claim) and as administrator of the child's estate (appropriate only to a survival action), and the plaintiff-status of both parents individually (appropriate only to their personal claims).
[2] The guardian ad litem's report and the release are the only documents involved in the first action which have been furnished to us as part of this record.
[3] The report stated that the action "was terminated by settlement of the plaintiff's claim as Administrator ad Prosequendum for the total sum of $15,000," but nevertheless refers not only to the applicable wrongful death distribution provision, N.J.S.A. 2A:31-4, but also to the then applicable probate intestate provision, N.J.S.A. 3A-4-4, which would have pertinence only to the survival action.
[4] Under the 1977 probate law amendments, the parents would have taken to the exclusion of the brother. See N.J.S.A. 3B:5-4.
[5] The subject matter of the release was described therein as "any and all liability arising out of an accident resulting in the death of Mario A. Goncalvez, an infant, which accident occurred on or about August 18, 1976 in the City of Elizabeth, New Jersey."
[6] We further note that this conclusion is not altered by the beneficial interest which was created for him by his father in respect of the first action. That, as we have noted, was the result of a party's voluntary act and, in any event, that beneficial interest would be at most a collateral source in terms of any damages to which he would be entitled in the second action.
[7] Clearly, the entire controversy doctrine is not implicated here since it only applies to claims and not parties. Thus, there was no compulsion, legal or otherwise, for Rui's separate cause of action to be joined with Mario's separate cause of action, even if both causes resulted from the same negligent action. See, e.g., Aetna Ins. Co. v. Gilchrist Brothers, Inc., 85 N.J. 550, 558 (1981); McFadden v. Turner, 159 N.J. Super. 360, 369-370 (App.Div. 1978).