245 N.J. Super. 591 (1991)
586 A.2d 334
LAVERNE ESDAILE, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
WINZEL HARTSFIELD, DEFENDANT, AND HAZEL FRANK GLUCK, ON BEHALF OF THE UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1990.
Decided February 8, 1991.
*593 Before Judges MICHELS, GRUCCIO and D'ANNUNZIO.
Richard J. Mirra argued the cause for appellant and cross-respondent (Boglioli & O'Mara, attorneys; William Pfister, Jr., of counsel and on the brief).
Stanley S. Spector argued the cause for respondent and cross-appellant (Shechet & Spector, attorneys; Stanley S. Spector, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Hazel Frank Gluck, on behalf of the Unsatisfied Claim and Judgment Fund Board ("Fund"), appeals from a *594 judgment of the Law Division that awarded plaintiff Laverne Esdaile attorneys' fees and costs of $13,362.05. Plaintiff cross-appeals from that portion of the judgment which ordered her to reimburse the Fund the $26,724.11 that she received in settlement of the personal injury claim.
Briefly, an intoxicated, uninsured motorist struck and seriously injured plaintiff as she stood next to a parked car. Neither plaintiff nor anyone else in her household owned a motor vehicle, nor did plaintiff have any insurance to pay her medical expenses. Because plaintiff lacked insurance coverage, she sought relief from the Fund. The Law Division ordered the Fund to pay plaintiff $40,086.16 as personal injury protection benefits ("PIP benefits").
Plaintiff's attorney discovered thereafter that a $300,000 insurance policy covered the tavern where the uninsured motorist drank before the accident. Plaintiff, thereupon, entered into a settlement with the tavern, releasing the tavern and the tavern owner's estate from "any and all claims for personal injuries as a result of [the] automobile accident ..." in exchange for $275,000.
Plaintiff moved for a determination as to whether the Fund was entitled to reimbursement from the proceeds of the settlement, and if so, whether she was entitled to counsel fees and costs. The trial court ordered plaintiff to reimburse the Fund $40,086.16 less counsel fees and costs of $13,362.05. This appeal followed.
Contrary to plaintiff's claim, the trial court properly required plaintiff to reimburse the Fund the $26,724.11 that she received in settlement with the tavern. There is nothing in this record to show or even suggest that plaintiff's settlement with the tavern's insurance carrier excluded the special damages included in the PIP benefits paid to plaintiff by the Fund. Clearly, plaintiff is not entitled to recover PIP benefits from the Fund and at the same time, recover these same damages in her personal injury damage action against the tavern. Allowing *595 plaintiff to retain the money received from the Fund for PIP benefits, as well as the money obtained from the tavern in settlement, sanctions a double recovery, defeats the important public policies underlying the Fund and undermines the financial integrity and stability of the Fund.
Enacted in 1952, the Unsatisfied Claim and Judgment Fund Law, N.J.S.A. 39:6-61 et seq., "establishes a fund, supported by insurers, to provide damage relief for persons who sustain losses or injury inflicted by financially irresponsible or unidentified operators of motor vehicles when such persons would otherwise be remediless." Ross v. Transport of N.J., 114 N.J. 132, 137, 553 A.2d 12 (1989) (citing Tiger v. American Legion Post No. 43, 125 N.J. Super. 361, 371, 311 A.2d 179 (App.Div. 1973); McKenna v. Wiskowski, 181 N.J. Super. 482, 489, 438 A.2d 355 (Ch.Div. 1981)). The Legislature created the Fund to "provide the kind of protection a liability insurance policy would provide." 25 New Jersey Practice § 1151 (1987). However, the Fund is not obligated to "make every claimant completely whole, but merely to provide some basic measure of relief to persons entitled thereto under its terms in order to forestall the possible hardship attendant on a claimant's absorption of the entire economic loss occasioned by the accident...." Id. A strong public policy favors the protection of the Fund's financial integrity, Ross v. Transport of N.J., 114 N.J. at 146, 553 A.2d 12, and thus, the Fund must "be administered in a fashion to assure that only those persons legitimately entitled to participate in its benefits are paid therefrom." Douglas v. Harris, 35 N.J. 270, 279, 173 A.2d 1 (1961).
In 1972, the Legislature amended the original Fund statute to allow the payment of PIP benefits in addition to traditional damages. N.J.S.A. 39:6-86.1-.6. To qualify for PIP benefits, the claimant must meet the eligibility requirements of the original Fund statute. N.J.S.A. 39:6-86.1e. Specifically, the claimant must show that she is "not covered with respect to such injury ... by any compensation law," N.J.S.A. 39:6-70(a), *596 and that at the time of the accident she was not operating a stolen vehicle or driving the vehicle without the owner's permission. N.J.S.A. 39:6-70(c). The PIP provisions of the Fund law, unlike the original law, do not require that amounts received from the Fund be reduced by money received from other sources. N.J.S.A. 39:6-70(m); N.J.S.A. 39:6-71(b).
In Wilson v. Unsatisfied Claim & Judgment Fund Bd., 109 N.J. 271, 536 A.2d 752 (1988), the Supreme Court discussed the payment of PIP benefits by the Fund where the claimant has an action against a third party for damages. In Wilson, plaintiff, a five-year old, suffered injuries when his uncle's uninsured car collided with a school bus operated by the Township of Moorestown Board of Education. Plaintiff filed claims against both the Fund and the Township. Plaintiff settled with the Township for $20,000. The Fund resisted the payment of PIP benefits to plaintiff arguing that plaintiff failed to first collect the expenses from the other parties in the case. Recognizing that the Legislature created PIP benefits to provide injured persons with ready access to medical and other important benefits, the Court concluded that "the presence of a responsible third party tortfeasor does not of itself make the claimant in an uninsured motor vehicle ineligible to recover PIP benefits from the Fund." Id. at 279, 536 A.2d 752.
Despite the availability of the third party claim, the Court allowed plaintiff to recover PIP benefits. However, the Court expressly disallowed a double recovery of PIP benefits and held, that in an appropriate case, the Fund may seek reimbursement for sums that plaintiff receives from the insured third party. In the Court's words:
[The trial court] directed the Fund to pay the plaintiff's PIP claims upon presentation of proper proofs. In another case, the Fund might wish to seek reimbursement or subrogation if the settlement was exclusive of "PIP-type" damages, or to disallow recovery if the settlement duplicates recovery for items such as lost wages or medical specials. If there is one definite principle that emerges from our PIP law, policy, and precedent, it is that there shall be no double recovery of PIP benefits. [Id. at 281, 536 A.2d 752].
*597 Realizing that its decision "tend[s] to deplete the Fund and thus increase the overall costs to all drivers," Id. at 279, 536 A.2d 752, the Court suggested that the Fund develop policies similar to those used by welfare agencies which advance financial assistance to needy persons who possess tort claims, and then obtain reimbursement from a subsequent damage award under an agreement to repay.
Applying these principles here, it is evident that the trial court properly ordered plaintiff to reimburse the Fund for the amount received as PIP benefits. If plaintiff retains the money received from the Fund, as well as the sum obtained from the tavern, she has a double recovery of PIP benefits which violates the principles discussed in Wilson and the public policies underlying the creation and maintenance of the Fund.
Despite plaintiff's arguments to the contrary, the general release that she gave to the tavern covers claims for medical expenses as well as pain, suffering and other damages arising out of her personal injuries. "[T]he scope of a release is determined by the intention of the parties as expressed in the terms of the particular instrument, considered in the light of all the facts and circumstances." Bilotti v. Accurate Forming Corp., 39 N.J. 184, 203-04, 188 A.2d 24 (1963). The document, executed by plaintiff, released the parties from "any and all claims for personal injuries as a result of [the] automobile accident...." In the absence of any limiting terms in the document, it must be assumed that plaintiff released her claims for personal injury as well as her claim for medical expenses and other PIP-type damages and that the $275,000 received by way of the release fully compensated her for the whole loss she sustained. "A general release, not restricted by its terms to particular claims or demands, ordinarily covers all claims and demands due at the time of its execution and within the contemplation of the parties." Id. at 204, 188 A.2d 24. See also Raroha v. Earle Finance Corp., Inc., 47 N.J. 229, 233-34, 220 A.2d 107 (1966); Goncalvez v. Patuto, 188 N.J. Super. 620, *598 629, 458 A.2d 146 (App.Div. 1983). Contrary to the view of our dissenting colleague, an inference cannot reasonably and fairly be drawn that the settlement of plaintiff's personal injury claim against the tavern excluded the special damage payment covered by the Fund's PIP payment because the settlement was less than the tavern's policy limit.
Furthermore, the principles discussed in the Wilson case and the public policies underlying the Fund support the trial court's decision. As noted previously, it is firmly settled public policy that the Fund only be used as a last resort and that its monies only be paid to those most in need. Because she received $275,000 as a settlement of all her claims, plaintiff no longer needs the Fund's support. As such, she is equitably obligated to return to the Fund the sums she originally received from it. Requiring plaintiff to reimburse the Fund is not only fundamentally fair, but it is also sound policy that helps contain the rising cost of insurance in New Jersey, assures that money is available in the Fund for other citizens in need and preserves the Fund's financial health and stability. Considering that plaintiff has no constitutional or statutory right to the sums in question and that plaintiff never contributed to the Fund since she did not own a car, it is only fair and just that plaintiff return to the Fund the money that she obtained from it. Thus, we affirm that portion of the judgment of the trial court that required plaintiff to reimburse the Fund $26,724.11.
However, we are equally convinced that the trial court erred in awarding plaintiff counsel fees from the money that she was obligated to return to the Fund. In Cheatham v. Unsatisfied Claim & Judgment Fund Bd., 178 N.J. Super. 437, 429 A.2d 407 (App.Div. 1981), we held that counsel fees are not appropriate in an action to obtain money from the Fund. There, an uninsured pickup truck struck and injured plaintiff, a bicyclist. Plaintiff brought a declaratory judgment against the Fund seeking PIP benefits. The trial court denied plaintiff's application, holding that the pickup was not an automobile and *599 as such plaintiff was not entitled to PIP benefits. Although we ultimately held that plaintiff was entitled to PIP benefits, we rejected completely plaintiff's request for counsel fees and costs, stating:
We also reject plaintiff's claim that he is entitled to an award of counsel fees. R. 4:42-9(a)(6) provides for the award of counsel fees in an action on a liability or indemnity insurance policy, in favor of a successful claimant. The Fund was not intended to be a liability insurance company for the uninsured driver, nor is it a substitute for an automobile liability policy. R. 4:42-9(a)(6) is not generally extended beyond its express provisions. In view of this, we do not agree with plaintiff that his action against the Fund is the equivalent of an action on an insurance policy. [Id. at 442, 429 A.2d 407 (citations omitted)].
Despite plaintiff's attempts to distinguish Cheatham from the matter under review, it is clear that the principles announced in the Cheatham decision apply here and mandate the reversal of the award of counsel fees and costs. The Fund is not an insurance company, nor is plaintiff a successful claimant under a liability insurance policy issued for her benefit. As such R. 4:42-9(a)(6) does not apply and plaintiff is not entitled to counsel fees and costs.
Moreover, because the money at issue originated from the Fund, it should not be the subject of counsel fees. The court originally awarded public money to plaintiff because she was without means to meet her expenses. The sum was not granted so that plaintiff could pay her attorney his fees and expenses. To use any part of this money to compensate plaintiff's lawyer directly contradicts the Legislature's intentions in establishing the Fund. The fact that plaintiff is returning the monies to the Fund instead of taking it in the first instance is irrelevant. The policy considerations apply with equal force in either situation.
Accordingly, we affirm that portion of the judgment of the Law Division that ordered plaintiff to reimburse the Fund, and we reverse that portion of the judgment that awarded plaintiff counsel fees and costs.
*600 D'ANNUNZIO, J.A.D., dissenting.
In Wilson v. Unsatisfied Claim and Judgment Fund Bd., 109 N.J. 271, 536 A.2d 752 (1988), the infant plaintiff had been a passenger in his uncle's uninsured automobile when it collided with a school bus. In parallel actions, plaintiff asserted liability claims against his uncle and against the board of education, as well as a claim for PIP benefits against the Fund under N.J.S.A. 39:6-86.1 et seq. After settling the liability claims and collecting $20,000 from the township, plaintiff was granted summary judgment against the Fund. In Wilson, the Supreme Court affirmed. Thus, the mere fact that an injured party has recovered personal injury damages from a tortfeasor does not disqualify the injured party from proceeding against the Fund for PIP benefits.
In the present case, the majority states that "plaintiff is not entitled to recover PIP benefits from the Fund and at the same time, recover these same damages for her personal injuries from the tavern." The majority also states that "[a]llowing plaintiff to retain the money received from the Fund for PIP benefits, as well as the money obtained from the tavern in settlement, sanctions a double recovery...." Both statements reflect an unfounded assumption by the majority that plaintiff's settlement included PIP elements. I agree that a double recovery should not be allowed, but the issue in this case is whether there has been a double recovery. That issue has not been resolved.
In an amended complaint, plaintiff asserted causes of action against the alleged tortfeasors responsible for her injuries and against the Fund for PIP benefits. In May 1988, in an order entered in that action, the Fund was ordered to pay plaintiff PIP benefits in the amount of $40,086.16. Ten months later, in March 1989, plaintiff settled with the insurance carrier for one of the tortfeasors for the sum of $275,000. A factfinder may infer that the tortfeasor's insurance carrier, having participated in the defense of the action, was aware of the Fund's PIP *601 payment to plaintiff. If the tortfeasor's insurance carrier was aware of the substantial PIP payment it is unlikely that the $275,000 settlement duplicated the special damages included in PIP benefits. Cf. N.J.S.A. 39:6A-12. Moreover, the record indicates that plaintiff's injuries were substantial. A May 1988 letter from plaintiff's treating physician to her lawyer states:
Laverne, in our opinion, has suffered a very severe and debilitating injury from the 1984 accident. She has been left with a stiff knee which is unquestionably painful. She has marked crippled gate. There is permanent weakness and marked skin distortion. The symptoms she has, and the present limitation of motion and activity are quite permanent and will not improve. There is no additional treatment that will help. We recommended she return here as necessary.
Plaintiff was 26 years old at the time of the accident.
Damages for personal injuries consist of several elements: special damages such as medical expenses and lost wages, pain and suffering and permanent injury. PIP benefits only compensate a plaintiff for certain special damages. N.J.S.A. 39:6A-4. To the extent that the $275,000 settlement did not include PIP elements, there has not been a double recovery and the Fund is not entitled to reimbursement.
The release, relied upon by the majority, does not specifically mention PIP elements such as lost wages or medical expenses, and begs the question of double recovery. The Fund has not claimed that the release has prejudiced any subrogation rights it may have, nor does the Fund claim that plaintiff ignored its requests to assert PIP subrogation rights in her claims against the tortfeasor. Indeed, there is nothing in the record to indicate that the Fund pressed any subrogation rights it may have had against any of the tortfeasors.
The sole issue in this case is whether plaintiff received a double recovery of the personal injury damage elements which make up PIP benefits. The motion judge made no finding regarding that issue. I would remand for a plenary hearing and fact-finding.
Regarding the attorney fee issue, the case relied upon by the majority, Cheatham v. Unsatisfied Claim & Judgment Fund *602 Bd., 178 N.J. Super. 437, 429 A.2d 407 (App.Div. 1981), is totally inapposite. Cheatham involved an application for counsel fees from the Fund under R. 4:42-9(a)(6) in an action against the Fund. In the present case, plaintiff contends that if the Fund is entitled to reimbursement of PIP benefits from the recovery against the tortfeasor, then the Fund should share in the costs of producing that recovery. Hedgebeth v. Medford, 74 N.J. 360, 378 A.2d 226 (1977), provides some support for plaintiff's contention. In that case, the Court noted that "a right of subrogation carries with it the equitable requirement of paying a pro rata share of counsel fees," id. at 369, 378 A.2d 226, and held that "the State, in seeking to benefit from a Medicaid recipient's judgment against a third-party tortfeasor, must pay its pro rata share of counsel fees incurred in obtaining that recovery." Id. at 368, 378 A.2d 226. However, in light of the necessity for remand, consideration by this court of the attorney fee issue is premature.