704 A.2d 1285

JESENIA JIMENEZ, PLAINTIFF–RESPONDENT, v. WILLIAM BAGLIERI, JOHN DOE (NAME BEING FICTITIOUS), ABC CORP. (NAME BEING FICTITIOUS) AND MATERIAL DAMAGE ADJUSTMENT CORP., AS SERVICING CARRIER FOR THE MARKET TRANSITION FACILITY, DEFENDANTS, AND SAMUEL FORTUNATO, COMMÍSSIONER OF INSURANCE AND UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANTS–APPELLANTS.

Argued October 20, 1997—Decided January 29, 1998.

338

*Jeffrey L. Love,* argued the cause for appellants (*Beattie Padovano,* attorneys).

*Douglas D. Burgess,* argued the cause for respondent (*Bross, Strickland & Burgess,* attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal presents the issue of whether individuals injured by hit-and-run motorists must satisfy the verbal threshold pursuant to *N.J.S.A.* 39:6–70(n), to recover noneconomic damages from the Unsatisfied Claim and Judgment Fund (Fund or UCJF). We conclude the Legislature intended that claimants injured in hit-and-run accidents must satisfy the verbal threshold to recover noneconomic damages from the Fund.

I

On July 2, 1991, while on her way to work, plaintiff Jesenia Jimenez was struck by a car. The car slowed momentarily, allowing plaintiff to catch a glimpse of the driver, but did not stop. Plaintiff got up and walked to her bus stop, where she caught a bus and went to work. Within minutes of her arrival, she told her employer about the incident and he told her to call the police. Plaintiff's employer then took her to the hospital because she was complaining of a headache, dizziness, and leg and back pain. The hospital took x-rays and found no fractures. The emergency room

physicians treated her with ice packs and analgesics for her head, back, and leg pain, and released her.

Subsequently, plaintiff sought treatment from Dr. Gary Bozian, a chiropractor. He treated her with massage therapy and spinal stimulation, and eventually referred her to Dr. John Burger, a neurologist, for tests related to her continuing headaches. Dr. Burger concluded that plaintiff would continue to suffer chronic periodic episodes of muscle spasm following physical or stressful events.

Based on a witness's partial identification of the license plate, plaintiff filed suit against William Baglieri, as the operator of the vehicle that had injured her. Plaintiff also named Samuel Fortunato, State of New Jersey Commissioner of Insurance (Commissioner), and the Unsatisfied Claim and Judgment Fund Board as defendants pursuant to *N.J.S.A.* 39:6–78. Plaintiff sought medical expenses from the Fund and personal injury protection benefits from the Material Damages Adjustment Corporation (MDA), the servicing carrier for Baglieri's insurance provider. After it was established that neither Baglieri nor his car were involved in the accident, the Law Division granted summary judgment in favor of Baglieri and MDA.

The Commissioner and the Fund filed a motion for summary judgment, asserting that the claim should be dismissed because plaintiff failed to present sufficient evidence of injuries satisfying the verbal threshold, as required by *N.J.S.A.* 39:6–70(n) (Section 70(n)). The court denied that motion and held as a matter of law that the verbal threshold did not apply.

A jury trial on the liability portion of the case resulted in a judgment against the unknown tortfeasor, holding that person one hundred percent liable for the accident and plaintiff's injuries. The damages portion of the case was set for trial on October 13, 1995; however, it was rescheduled for November 1, 1995 because plaintiff's attorney was involved in an automobile accident. On November 1, 1995, defendants moved for a one-day adjournment because their medical expert was unavailable to testify on the

rescheduled trial date. The court denied the motion. The jury returned a verdict in favor of plaintiff in the amount of $25,000. On November 17, 1995, judgment was entered on behalf of plaintiff in the reduced amount of $15,000 pursuant to *N.J.S.A.* 39:6–73. Subsequently, an amended judgment was entered pursuant to *N.J.S.A.* 39:6–69, requiring the Fund to pay personal injury protection (PIP) benefits to plaintiff.

Defendants appealed, and the Appellate Division affirmed the trial court's denial of the Fund's summary judgment motion. The panel, relying on *Rivera v. Fortunato,* 285 *N.J.Super.* 168, 666 *A.*2d 619 (Law Div.1995), concluded that the verbal threshold does not apply to plaintiffs injured by hit-and-run motorists. 295 *N.J.Super.* 162, 684 *A.*2d 969 (1996). The court also held that the trial court had abused its discretion in denying the one-day adjournment, and therefore, the court remanded the case for a new trial on damages.

We granted the Commissioner's petition for certification, 148 *N.J.* 461, 690 *A.*2d 608 (1997).

## II

In 1952, as part of an automobile insurance reform package, the Legislature enacted the Unsatisfied Claim and Judgment Fund Law, *L.* 1952, *c.* 174 (codified at *N.J.S.A.* 39:6–61 to –91) (Fund Act),[1] to provide for the establishment, maintenance, and administration of a fund for the payment of damages for personal injuries or property damage arising out of accidents involving uninsured or unknown owners of automobiles. Only claimants who are statutorily qualified under *N.J.S.A.* 39:6–62 may recover benefits under the Fund. A "qualified person" is defined as one who lacks

---

[1] On the same date, the Legislature enacted the Motor Vehicle Security–Responsibility Law, *L.* 1952, *c.* 173 (codified at *N.J.S.A.* 39:6–23 to –57), to assure "financial responsibility for damages caused by automobile accidents." Cynthia M. Craig & Daniel J. Pomeroy, *New Jersey Auto Insurance Law,* § 1:2–2 (1997 ed.) (Craig & Pomeroy).

recourse to uninsured motorist benefits under an applicable insurance policy. *N.J.S.A.* 39:6–62. Benefits are provided to two classes of individuals, those injured by known uninsured motor vehicles, *N.J.S.A.* 39:6–69, and those injured by hit-and-run drivers, *N.J.S.A.* 39:6–78.

That plaintiff is a "qualified person" to recover benefits under the Fund Act is undisputed. The issue is whether, as a victim of a hit-and-run driver, she is subject to the verbal threshold requirements established in *N.J.S.A.* 39:6A–8. The Commissioner asserts that Section 70(n) applies and, therefore, for an eligible claimant injured in a hit-and-run accident to recover noneconomic damages from the UCJF, he or she must have suffered an injury that satisfies the verbal threshold. Plaintiff asserts, however, that Section 70(n), and thus the verbal threshold, is limited in application to cases involving known uninsured drivers, and does not apply to accidents involving hit-and-run motorists. To resolve that issue, we first review the Legislature's intent in enacting the Fund Act and the verbal threshold.

### A.

### *The Fund Act*

The purpose of the UCJF is to "provide a measure of relief to persons who sustain losses inflicted by financially irresponsible or unknown owners and operators of motor vehicles, where such persons would otherwise be remediless." *Dixon v. Gassert,* 26 *N.J.* 1, 5, 138 *A.*2d 14 (1958); *Douglas v. Harris,* 35 *N.J.* 270, 279, 173 *A.*2d 1 (1961); *Corrigan v. Gassert,* 27 *N.J.* 227, 233, 142 *A.*2d 209 (1958). "The [L]egislature created the Fund 'to provide the kind of protection a liability insurance policy would provide.'" *Unsatisfied Claim and Judgment Fund Bd. v. New Jersey Mfrs. Ins. Co.,* 138 *N.J.* 185, 189, 649 *A.*2d 1243 (1994) (quoting *Esdaile v. Hartsfield,* 245 *N.J.Super.* 591, 595, 586 *A.*2d 334 (App.Div.1991)) (citations omitted). However, the Fund was never intended to make every claimant whole or to compensate all accident victims; rather, it was intended to "offer some measure

of relief to those who come within the class intended to be protected, to prevent a claimant from being forced to absorb the entire economic loss caused by the accident." *Ibid.* The amounts recoverable from the Fund consist of basic PIP coverage, *see N.J.S.A.* 39:6–86.1 and –86.4, and recovery for bodily injury and property damage not covered by PIP, limited to $15,000 per person, $30,000 per accident for bodily injury and amounts in excess of $500, but not more than $5,000, for property damage per accident, *N.J.S.A.* 39:6–69.

To be eligible for Fund benefits, claimants must comply with numerous procedural requirements. *See, e.g., N.J.S.A.* 39:6–65, –80. The Fund Act contains separate sections governing hearings for those injured by known uninsured drivers from whom damages cannot be recovered, *N.J.S.A.* 39:6–70, and for those injured in hit-and-run accidents, *N.J.S.A.* 39:6–78. For hit-and-run accidents, the Fund Act provides that "no judgment against the Commissioner shall be entered unless the court is satisfied, upon the hearing of the action," that: (a) the plaintiff has given the Board written notice of intent to make a claim within the time permitted by *N.J.S.A.* 39:6–65, (b) the injuries are not covered by workers' compensation laws, (c) the plaintiff was not the owner of an uninsured motor vehicle at the time of the accident or operating an automobile in violation of an order of suspension or revocation, (d) the plaintiff has a cause of action against the operator or owner of the hit-and-run vehicle, (e) all reasonable efforts have been made to identify the vehicle and its owner, and (f) the action is not brought on behalf of an insurer under the circumstances prohibited by *N.J.S.A.* 39:6–70(*l*). *N.J.S.A.* 39:6–78(a)–(f); *Rivera, supra,* 285 *N.J.Super.* at 172, 666 *A.*2d 619.

The hearing requirements in *N.J.S.A.* 39:6–70 for accidents involving known uninsured automobiles are similar to the provisions of *N.J.S.A.* 39:6–78. There are, however, requirements for victims of known uninsured drivers that are unique to those accidents. Such claimants must first recover a judgment against the driver of the automobile and execute on that judgment before

seeking payment from the Fund. *N.J.S.A.* 39:6–70(h)–(k). Because the victim of a known uninsured driver, unlike the victim of a hit-and-run driver, is seeking a judgment against a known person, that additional requirement is self-explanatory.

## B.

### *Verbal Threshold Law*

During the past three decades, the Legislature has passed several statutes intended to reduce New Jersey's ever-increasing automobile insurance premiums. *See* New Jersey Automobile Reparation Reform Act (No–Fault Act), *L.* 1970, *c.* 70, subsequently amended by *L.* 1972, *c.* 203 (codified at *N.J.S.A.* 39:6A–1 to –18); New Jersey Automobile Insurance Freedom of Choice Act and Cost Containment Act of 1984, *L.* 1983, *c.* 362, § 2 (Cost Containment Act); "Verbal Threshold Law," *L.* 1988, *c.* 119 (codified at *N.J.S.A.* 39:6A–8, –8.1).

In 1988, the Legislature enacted the Verbal Threshold Law, which requires those purchasing automobile insurance to choose between two types of coverage for recovery for noneconomic losses resulting from automobile-related injuries. *N.J.S.A.* 39:6A–8; *Oswin v. Shaw,* 129 *N.J.* 290, 297, 609 *A.2d* 415 (1992). The verbal threshold option allows recovery for noneconomic losses only for those personal injuries that fit into one of nine specified categories.[2] *N.J.S.A.* 39:6A–8(a); *Shaw, supra,* 129 *N.J.* at 297, 609 *A.2d* 415. The traditional tort option, on the other hand,

---

[2] The nine categories are:

> death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment....
>
> [*N.J.S.A.* 39:6A–8(a).]

permits unrestricted recovery of noneconomic damages. *N.J.S.A.* 39:6A–8(b). An insured who elects the tort option pays a higher premium in return for the unlimited right to sue. *N.J.S.A.* 39:6A–8.1(a); *Shaw, supra,* 129 *N.J.* at 297, 609 *A.*2d 415. An insured who fails to select a form of coverage is deemed to have chosen the verbal threshold. *N.J.S.A.* 39:6A–8.1(b); *Shaw, supra,* 129 *N.J.* at 297, 609 *A.*2d 415.

As originally enacted, the verbal threshold applied to all insureds who did not elect the tort option, and to PIP claimants lacking any insurance, such as pedestrians or passengers. *New Jersey Mfrs. Ins. Co., supra,* 138 *N.J.* at 188, 649 *A.*2d 1243. In 1990, *N.J.S.A.* 39:6A–8(b) was amended to provide that claimants who are not required to purchase automobile insurance, such as passengers and pedestrians who do not own vehicles or who are not immediate family members of vehicle owners, such as plaintiff in this case, are no longer deemed to have chosen the verbal threshold. *Sumner v. Unsatisfied Claim and Judgment Fund,* 288 *N.J.Super.* 384, 388, 672 *A.*2d 731 (App.Div.1996). Accordingly, had plaintiff been struck by a known insured driver, she would not have been subject to the verbal threshold and would have recovered damages from the tortfeasor driver's insurance company. However, as the victim of a hit-and-run driver, plaintiff's only recourse for recovery is to the Fund, and that recovery is governed by the provisions of the Fund Act.

### III

We turn now to an examination of the critical section of the Fund Act, Section 70(n), which provides:

In order to recover for noneconomic loss, as defined in section 2 of P.L.1972, c. 70 (C. 39:6A–2) for accidents to which the benefits of section 7 and 10 of P.L.1972, c. 198 (C. 39:6–86.1 and C. 39:6–86.4) [PIP benefits] apply, the injured person shall have sustained an injury described in subsection a. of section 8 of P.L.1972, c. 70 (C. 39:6A–8) [the verbal threshold].[3]

---

[3] *N.J.S.A.* 39:6A–2 defines "noneconomic loss" as "pain suffering and inconvenience."

Section 70(n) is included in the portion of the Fund Act that relates to known uninsured drivers. However, Section 70(n) explicitly states that an injured person must have sustained an injury described in *N.J.S.A.* 39:6A–8(a) (i.e., satisfy the verbal threshold) "[i]n order to recover noneconomic loss ... *for accidents to which the benefits of ... section ... 39:6–86.4 apply.*" Section 39:6–86.4 deals exclusively with hit-and-run claimants and contains the requirements that hit-and-run claimants must meet to recover PIP benefits. Notwithstanding the reference to a section applicable only to victims of hit-and-run accidents, plaintiff asserts that the inclusion of Section 70(n) in the section governing known uninsured drivers, rather than in the separate section controlling hit-and-run accidents, indicates the Legislature's intention to subject only those claimants injured by known uninsured vehicles to the verbal threshold. We disagree.

### A.

Although we find that the plain language of Section 70(n) offers support for the conclusion that it applies to hit-and-run drivers, that language does not plainly resolve the issue because of the section's placement in the provision governing victims of known uninsured drivers. Additionally, courts faced with the question of whether victims of hit-and-run accidents must satisfy the verbal threshold have reached different conclusions. *See, e.g., Rivera, supra,* 285 *N.J.Super.* at 176, 666 *A.2d* 619 (finding verbal threshold does not apply); *Cureton v. Eley,* 294 *N.J.Super.* 321, 683 *A.2d* 248 (Law Div.1996) (finding verbal threshold does apply). As we observed previously, where "[e]ach [party's interpretation] is plausible, but no more persuasive than that ... [t]he intent of [the Legislature] ... must be deduced." *Martin v. Home Ins. Co.,* 141 *N.J.* 279, 285, 661 *A.2d* 808 (quoting *EEOC v. Arabian Am. Oil Co.,* 499 *U.S.* 244, 250–51, 111 *S.Ct.* 1227, 1231–32, 113 *L.Ed.2d* 274, 283 (1991)) (alterations in original). And, "[i]n the absence of specific guidance, our task is to discern the intent of the Legislature not only from the terms of the Act, but also from

its structure, history and purpose." *Martin, supra,* 141 *N.J.* at 285, 661 *A.*2d 808 (quoting *Fiore v. Consolidated Freightways,* 140 *N.J.* 452, 471, 659 *A.*2d 436 (1995)). Ultimately, "[i]t is not the words but the internal sense of the law that controls." *Roig v. Kelsey,* 135 *N.J.* 500, 516, 641 *A.*2d 248 (1994) (quoting *Wollen v. Fort Lee,* 27 *N.J.* 408, 418, 142 *A.*2d 881 (1958)). Also, in interpreting the Fund Act, we must bear in mind that "[t]hat which is clearly implied is as much a part of the law as that which is expressed." *Giles v. Gassert,* 23 *N.J.* 22, 35, 127 *A.*2d 161 (1956).

Since its enactment, the Legislature has continuously sought to preserve the Fund's assets. In 1972, the Legislature amended the No–Fault Act. *L.* 1972, *c.* 203. "One of the motivating thrusts behind the 1972 reform package was the extraordinary pressures on the ... Fund by reason of the claims of individuals injured by uninsured motorists." Craig & Pomeroy, *supra,* § 1:2–4(b)(3). Because that statutory scheme failed to slow the increase in premium rates, the Legislature enacted the Cost Containment Act, *L.* 1983, *c.* 362, § 2. The primary goal of that Act, of which Section 70(n) was a part, was to bring about "long sought after reductions in premiums for New Jersey motorists." *Statement of Governor Thomas H. Kean on signing Bill No. A–3981* (Oct. 4, 1983).

In 1988, the Legislature enacted the Verbal Threshold Law. To protect the assets of the UCJF and to reduce the number of lawsuits, the Legislature included the requirement in Section 70(n) that Fund claimants must satisfy the verbal threshold. *See, e.g., Oswin v. Shaw, supra,* 129 *N.J.* at 318, 609 *A.*2d 415 (holding that the purpose of the verbal threshold and no fault statute is "to reduce the amount of litigation and to hold down the cost of premiums"); *Governor's Reconsideration and Recommendation Statement,* 3–4 (Aug. 4, 1988) (finding verbal threshold's "essential purpose [is] closing the door to all lawsuits except those involving bona fide serious injuries").

B.

The history of the Fund Act also demonstrates the Legislature's intent to treat claimants injured in hit-and-run accidents and claimants injured by known uninsured drivers alike. When originally enacted, the Fund Act contained a $200 monetary threshold that applied only to hit-and-run cases. *L.* 1952, *c.* 174, § 18. In 1958, the Fund Act was amended to eliminate certain "inequities and objectionable features." *Sponsor Statement to Assembly Bill No. A422* (Mar. 31, 1958). Among the changes, the Legislature amended *N.J.S.A.* 39:6–78 to eliminate the $200 threshold applicable only to actions involving hit-and-run accidents, resulting in both classes of claimants being treated the same. Subsequently, in 1972, with the enactment of the No–Fault Act, the Legislature continued to treat both classes of claimants the same by making PIP benefits available to both. *See N.J.S.A.* 39:6–86.1 and –86.4.

The Legislature's desire to treat both classes equally is further supported by looking at the requirements for the two classes of claimants to collect from the Fund set forth in *N.J.S.A.* 39:6–70 and –78. In those sections, only section 70(n) "does not on its face appear to be *sui generis* to uninsured motorist claims [and] is neither restated nor incorporated by reference in [the sections] governing hit-and-run claims." *Rivera, supra,* 285 *N.J.Super.* at 176, 666 *A.*2d 619. Although it could be argued that its placement signals a desire to apply Section 70(n) solely to victims of known uninsured drivers, *ibid.,* we believe that the Legislature's purpose was to treat both classes of claimants the same. Indeed, there is no indication that the Legislature intended to treat the two classes of claimants differently. Nor is there any reason why the Legislature would subject victims of known uninsured drivers to the verbal threshold, while excluding victims of hit-and-run accidents from the verbal threshold. From the Fund's perspective such a distinction is unjustifiable. It makes no sense. Neither the victim of a hit-and-run driver nor the victim of a known uninsured driver is able to recover benefits from the tortfeasor who caused the accident. Because the intent of the Legislature is to treat the two

classes of claimants alike, we see no reason to impose an arbitrary distinction between them.

## C.

Courts have been reluctant to construe the language of the Fund Act strictly, particularly where the words could be read as creating a distinction between the two classes of claimants. For example, in *Giles v. Gassert, supra,* this Court held that a provision for extending the thirty-day period for filing a notice of claim because of incapacity applied to actions involving hit-and-run accidents and to accidents involving known uninsured drivers. 23 *N.J.* at 31, 127 *A.*2d 161. Although the language of the statute supported the argument that the extension was limited to accidents involving known uninsured drivers, we stated: "Deferment of notice for physical disability where the tortfeasor is known and not where he is unknown would be illusory, a wholly arbitrary distinction not at all in keeping with the spirit and the indubitable reason and policy of the statute." *Id.* at 33, 127 *A.*2d 161.

Similarly, in *Serkes v. Parsekian,* 73 *N.J.Super.* 344, 348, 179 *A.*2d 785 (1962), the Law Division held that the guest exclusion clause of *N.J.S.A.* 39:6–70 was applicable to hit-and-run accidents, even though that clause was neither restated nor incorporated in *N.J.S.A.* 39:6–78. In rejecting the claim that, by placing the guest exclusion clause in the section governing accidents involving known uninsured drivers, the Legislature intended to limit its application to accidents involving known uninsured vehicles, the court concluded: "To summarily so confine the application of the 'exclusion clause' would be to disregard the essential legislative policy." *Ibid.* The court explained that the failure of the Legislature to include the exclusion clause in *N.J.S.A.* 39:6–78 was more likely due to the Legislature's failure to foresee the exclusion clause's applicability to hit-and-run accidents than to a desire to treat hit-and-run claimants differently. *Ibid.*

## IV

Courts have repeatedly stressed their role in protecting the assets of the Fund because "[i]n essence, the judiciary ... is the guardian of the trust monies represented by our statutory Fund." *Szczesny v. Vasquez*, 71 *N.J.Super.* 347, 358, 177 *A.2d* 47 (App.Div. 1962); *Garcia v. Snedeker*, 199 *N.J.Super.* 254, 261, 489 *A.2d* 175 (App.Div.1985). In *Giles, supra*, we stated "[t]he statute is to be liberally construed to advance the remedy, due regard being had to the protection of the Fund against fraud and abuse and to the fulfillment of the essential legislative policy." 23 *N.J.* at 34, 127 *A.2d* 161. We have also stressed that the Fund was not intended to make every claimant whole, but was intended to provide limited relief to prevent a claimant from being forced to shoulder the entire loss caused by the accident. *New Jersey Mfrs. Ins. Co., supra*, 138 *N.J.* at 189, 649 *A.2d* 1243.

Rather than protecting the Fund from fraud and abuse, we are convinced that plaintiff's proffered interpretation would encourage fraud and abuse. Under plaintiff's construction of the Fund Act, claimants injured by known uninsured drivers who do not satisfy the verbal threshold cannot recover for noneconomic damages, whereas claimants injured in hit-and-run accidents can recover without limitations. That construction might encourage those injured by uninsured drivers to claim they were injured in a hit-and-run accident, and would discourage those injured in hit-and-run accidents from making reasonable efforts to ascertain the identity of the vehicle involved. That result would not only be contrary to our responsibility to protect the Fund from fraud and abuse, but also would vitiate *N.J.S.A.* 39:6–78(e)'s requirement that claimants take reasonable efforts to ascertain the identity of the driver and owner of the vehicle.

Moreover, eliminating the verbal threshold for hit-and-run claims would deplete the Fund because the Commissioner cannot exercise his right of subrogation against unknown tortfeasors. It would also result in more lawsuits and court congestion, resulting in increased costs that ultimately will be passed on to New Jersey

insureds. Assets of the UCJF consist of assessments levied by the Commissioner against insurers writing motor vehicle policies in New Jersey, "in the proportion that the net written premiums of each bear to the aggregate net direct written premiums of all insurers." *N.J.S.A.* 39:6–63(d). All insurers doing business in New Jersey are informed annually of their assessed contribution to the Fund. *Ibid.* If, after receiving the assessed amounts, the Fund lacks sufficient assets, the Commissioner reassesses the insurers. *Ibid.* If the Fund is depleted by hit-and-run claimants seeking noneconomic damages, insurers will be assessed greater amounts by the Commissioner. The insurers undoubtedly will attempt to recoup those costs by passing them on to insureds.

## V

"In the interpretation of a statute our overriding goal has consistently been to determine the Legislature's intent in enacting a statute." *Roig, supra,* 135 *N.J.* at 515, 641 *A.*2d 248. "It is the obvious reason of a law that gives it life, not the strict, literal sense of terms." *Giacobbe v. Gassert,* 29 *N.J.* 421, 425, 149 *A.*2d 214 (1959). "[S]tatutes are to be read sensibly rather than literally." *Roig, supra,* 135 *N.J.* at 515, 641 *A.*2d 248 (quoting *Schierstead v. Brigantine,* 29 *N.J.* 220, 230, 148 *A.*2d 591 (1959)). "The inquiry in the ultimate analysis is to determine the true intention of the law; and, to this end, the particular words are to be made responsive to the essential purpose of the law." *Wollen, supra,* 27 *N.J.* at 418, 142 *A.*2d 881.

"From the inception of the no-fault statutory scheme, the Legislature intended to eliminate minor personal-injury-automobile-negligence cases from the court system." *Roig, supra,* 135 *N.J.* at 510, 641 *A.*2d 248; *see Statement by Governor Kean on Senate Bill No. 2637* (1988) *(reprinted at N.J.S.A.* 17:28–1.4). Requiring eligible hit-and-run claimants to satisfy the verbal threshold furthers that goal and also furthers the Fund Act's goal of providing limited relief to claimants to prevent those injured from having to absorb the entire economic loss. Even if eligible hit-and-run

claimants do not satisfy the verbal threshold, they still receive PIP benefits, *see N.J.S.A.* 39:6–86.4, and recover for bodily injury and property damage not covered by PIP, *see N.J.S.A.* 39:6–69.

We are convinced the Legislature did not intend to exempt eligible claimants injured in hit-and-run accidents from satisfying the verbal threshold. If the Legislature disagrees with our construction of the Fund Act, it may, of course, enact clarifying legislation.

## VI

Although we decide that plaintiff must satisfy the verbal threshold, we express no opinion on whether plaintiff's injuries satisfy the threshold. The Commissioner moved for summary judgment on the ground that plaintiff's injuries did not satisfy the verbal threshold, and the trial court denied the motion, holding that the verbal threshold did not apply. We therefore remand to the Law Division for reconsideration of the Commissioner's motion for summary judgment.

The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.