972 A.2d 1103

OMAR SANDERS, PLAINTIFF-RESPONDENT, v. NORMA K. LAN-GEMEIER, PATRICIA L. LESLIE AND CLARENDON NA-TIONAL INSURANCE COMPANY, DEFENDANTS, AND NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION, DEFENDANT-APPELLANT.

Argued February 18, 2009—Decided May 4, 2009.

*Hugh P. Francis* argued the cause for appellant (*Francis & Berry*, attorneys; *Mr. Francis* and *Peter A. Olsen*, on the briefs).

*Kenneth E. Ryan* argued the cause for respondent (*Weiner, Ryan & Mazzei*, attorneys).

*Paul G. Witko*, Deputy Attorney General, argued the cause for amicus curiae Commissioner of Banking and Insurance (*Anne

*Milgram*, Attorney General of New Jersey, attorney; *Melissa H. Raksa*, Deputy Attorney General, of counsel).

*Jeffrey A. Rizika* submitted a brief on behalf of amicus curiae Association of Trial Lawyers of America–New Jersey (*Starr, Gern, Davison & Rubin*, attorneys; *Mr. Rizika* and *James A. Meszaros*, on the brief).

*Susan Stryker* submitted a brief on behalf of amici curiae Insurance Council of New Jersey, American Insurance Association, Property Casualty Insurance Association of America and National Association of Mutual Insurance Companies (*Clyde & Co, US*, attorneys).

Justice HOENS delivered the opinion of the Court.

In this matter, we consider whether an individual who was entitled to emergency medical services pursuant to the special automobile insurance coverage known as the "Dollar–A–Day" [1] policy, *see N.J.S.A.* 39:6A–3.3, has a right to seek reimbursement from the Unsatisfied Claim and Judgment Fund (UCJF) for the cost of additional, non-emergency, medical treatments he later received after his discharge from emergency care. Our reading of the plain language of the statute creating the UCJF benefits, *N.J.S.A.* 39:6–86.1, and of the statutes governing automobile insurance, *see N.J.S.A.* 39:6A–1 to –35, demonstrates that the Legislature intended that an individual covered by this special automobile insurance policy would not be entitled to secure such further benefits from the UCJF.

## I.

Plaintiff Omar Sanders was a passenger who was riding in a vehicle owned and operated by defendant Patricia Leslie when it was involved in a collision with a vehicle operated by defendant

---

[1] *See* Press Release, N.J. Dep't of Banking and Ins., *Number of Dollar–a–Day Policies Tops 1,500* (April 7, 2004), *available at* http://www.nj.gov/dobi/pressreleases/pr040407.htm.

Norma Langemeier. Plaintiff was taken to the hospital, where he received emergency treatment for the injuries he had sustained, following which he was released. Approximately two weeks later, plaintiff began a further course of treatment which continued for several months on a non-emergency basis and for which he incurred $2,305 in medical bills.

Plaintiff did not own an automobile and had no insurance policy of his own. Leslie's vehicle, in which he was a passenger, was insured by a "special automobile insurance policy," *see N.J.S.A.* 39:6A–3.3, issued by defendant Clarendon National Insurance Company. That policy, often referred to as "Dollar–A–Day" coverage, entitled plaintiff to "emergency personal injury protection" (emergency PIP) benefits. *N.J.S.A.* 39:6A–3.3(b)(1). Although Clarendon had paid for all of the emergency care plaintiff received at the hospital, it denied plaintiff's claim for the subsequent treatment because that treatment did not meet the definition of "emergency" care. The driver of the other automobile involved in the collision, defendant Langemeier, was also insured. She had an insurance policy issued by Allstate Insurance Company that included standard personal injury protection (PIP) benefits, but which did not afford any benefits to plaintiff. *See Sotomayor v. Vasquez,* 109 *N.J.* 258, 263, 536 *A.*2d 746 (1988) (concluding that PIP coverage does not extend to passengers in another vehicle).

Because plaintiff's claim for non-emergency treatment was not covered by the host driver's special insurance policy and because he had no entitlement to any benefits under the Allstate policy issued to the other driver, plaintiff concluded that he had an unsatisfied claim. He therefore sought payment for his non-emergency medical expenses from the New Jersey Property–Liability Insurance Guaranty Association (NJPLIGA), in its capacity as the statutory administrator of the UCJF, *see N.J.S.A.* 39:6–64c (transferring UCJF functions, powers, and duties to NJPLIGA). When NJPLIGA denied the claim, plaintiff filed suit against both drivers, Clarendon, and NJPLIGA, seeking damages for pain

and suffering and for payment of his non-emergency medical bills. He settled his claim against Langemeier and dismissed his complaint against Leslie and Clarendon, her insurer.

Plaintiff and NJPLIGA filed cross-motions for summary judgment directed to the only question that remained, namely, whether the UCJF is responsible for plaintiff's non-emergency medical care. The court granted summary judgment in plaintiff's favor, and denied both NJPLIGA's motion for summary judgment and its motion for reconsideration. In summary, the motion court interpreted the UCJF statute to require it to provide coverage because there were no benefits available to plaintiff for non-emergency care. In essence, the court concluded that the special policy's limited PIP coverage was equivalent to an absence of full PIP coverage, rendering plaintiff uninsured and, therefore, entitling him to coverage from the UCJF. NJPLIGA appealed, and the Appellate Division affirmed in a published opinion. *Sanders v. Langemeier,* 401 *N.J.Super.* 125, 949 *A.*2d 295 (App.Div.2008).

We granted NJPLIGA's petition for certification, 196 *N.J.* 601, 960 *A.*2d 396 (2008), and we also granted leave to the Commissioner of Banking and Insurance, the Association of Trial Lawyers of America–New Jersey and a group of insurance industry representatives to file briefs or to participate as amici curiae in this appeal.

## II.

Plaintiff urges us to affirm the decision of the Appellate Division. He argues that the plain language of the statute governing the UCJF makes it applicable to him because only emergency PIP coverage was available to him through his host driver, rather than PIP benefits. He argues that the UCJF was intended to provide benefits for those persons who would otherwise be without a remedy and urges us to agree with the Appellate Division that he falls within that class of claimants. Finally, he argues that because the Legislature, in creating this special policy with its emergency PIP benefits, did not amend the UCJF to include it specifically, it must have intended to make no change in the

meaning of the UCJF's reference to PIP coverage, thus entitling him to relief.

NJPLIGA also argues that the statutory language is plain, but urges us to reverse the Appellate Division's analysis and resulting judgment. NJPLIGA asserts that the panel's decision is flawed because it equated emergency PIP with "no PIP" for purposes of determining whether the UCJF was statutorily required to provide coverage to plaintiff. Moreover, NJPLIGA argues that the appellate panel's focus on persons entitled to be covered under the UCJF overlooked the difference between providing coverage to one who is injured by a financially irresponsible driver and supplementing coverage available through a driver who has opted for a policy that plaintiff believes is inadequate. Finally, NJPLIGA asserts that the appellate court misread the separate statutory provision deeming the holder of a special policy to be the equivalent of an uninsured driver as it relates to uninsured motorist (UM) coverage and thereby inappropriately extended that language, creating uninsured status for PIP purposes.

The three entities and groups to which we have accorded amicus curiae status took disparate approaches to the issue. The Commissioner of Banking and Insurance asserts that the Appellate Division decision "stood UCJF law on its head" and supports NJPLIGA in urging us to reverse. The Commissioner argues that had the Legislature intended to expand the UCJF's personal injury protection responsibility to include passengers in vehicles covered by special policies, it would have done so, noting that the Legislature created an exception to the UCJF requirements in other circumstances. See N.J.S.A. 39:6–86.7 (creating exception for pedestrians). In addition, the Commissioner points out that the UCJF was not intended to provide complete relief to all persons who sustain injuries in an automobile accident but instead was designed to serve a more limited purpose. Finally, the Commissioner warns that the Appellate Division's decision threatens to greatly expand the UCJF's responsibilities, which will

inevitably pass unintended costs along to the insuring public and undo the results of recent cost-saving measures.

Amici curiae the Insurance Council of New Jersey, American Insurance Association, Property Casualty Insurance Association of America, and National Association of Mutual Insurance Companies also urge us to reverse. They argue that UCJF benefits are designed to be available to injured passengers who have no recourse to PIP benefits, and were not intended to be a supplement to the PIP benefits available under a special policy. They point out that the consequence for this plaintiff is no different from that which would pertain to a passenger in a vehicle whose driver chose a low level of PIP coverage, a circumstance which no one argues would result in UCJF liability. Finally, they argue that the Legislature's choice in defining a vehicle under a special policy as "uninsured" for purposes of UM coverage only affects claims based on liability, and has no application to PIP claims, which arise instead under the no-fault provisions of New Jersey's automobile insurance law.

Amicus curiae the Association of Trial Lawyers of America–New Jersey (ATLA–NJ), on the other hand, supports plaintiff's position, and urges us to affirm the judgment of the Appellate Division. In short, ATLA–NJ argues that PIP is distinct from emergency PIP and that the UCJF protections should be construed broadly in favor of innocent victims such as plaintiff, who otherwise will not be afforded the broader benefits available from PIP coverage.

### III.

We begin, as we must, with a brief review of the principles that govern our analysis of the statutes that are central to this appeal. "In any matter requiring our consideration of a statute, our essential task is to understand and give effect to the intent of the Legislature." *Pizzullo v. N.J. Mfrs. Ins. Co.*, 196 *N.J.* 251, 263–64, 952 *A.2d* 1077 (2008). "In doing so, we look first to the plain language of the statute, seeking further guidance only

to the extent that the Legislature's intent cannot be derived from the words that it has chosen." *Id.* at 264, 952 *A.*2d 1077.

In this effort, we "read the words selected by the Legislature in accordance with their ordinary meaning, unless the Legislature has used technical terms, or terms of art, which are construed in accordance with those meanings." *Bosland v. Warnock Dodge, Inc.,* 197 *N.J.* 543, 553, 964 *A.*2d 741 (2009) (citations and internal quotation marks omitted). We will not " 'rewrite a plainly-written enactment of the Legislature ... [or] presume that the Legislature intended something other than that expressed by way of the plain language.' " *Ibid.* (alteration in original) (quoting *O'Connell v. State,* 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002)). "In the event that the language is not clear and unambiguous on its face, we look to other interpretive aids to assist us in our understanding of the Legislature's will." *Pizzullo, supra,* 196 *N.J.* at 264, 952 *A.*2d 1077.

### A.

The dispute between the parties requires us to consider two separate statutory frameworks. First, we must look at the function and purpose of the UCJF, with particular attention to the role it plays in relation to PIP coverage. Second, we must consider the varying PIP provisions that the Legislature has enacted over time, including the standard PIP coverage, the so-called "basic" PIP coverage, and the emergency PIP coverage included in the policy that applies to plaintiff.

We begin with the aspect of the UCJF statute on which the dispute in this appeal centers, and pursuant to which the UCJF shall provide benefits:

> [w]hen any person qualified to receive payments under the provisions of the "Unsatisfied Claim and Judgment Fund Law" suffers bodily injury or death ... arising out of an accident while occupying ... an automobile, registered or principally garaged in this State for which personal injury protection benefits under the "New Jersey Automobile Reparation Reform Act," P.L. 1972, c. 70 ( [*N.J.S.A.*] 39:6A–1 et seq.), ... would be payable to such person if personal injury protection coverage were in force and the damages resulting from such accident or

death are not satisfied due to the personal injury protection coverage not being in effect with respect to such accident. . . .
[*N.J.S.A.* 39:6–86.1.]

■ This language includes four separate requirements that any claimant must satisfy in order to be entitled to receive benefits from the UCJF, three of which are not in dispute. That is, there is no debate about whether plaintiff is "qualified to receive" benefits, *see N.J.S.A.* 39:6–62, that he was injured in an accident, and that he was injured while occupying an automobile registered or principally garaged in this State. Instead, the focus of this dispute is on the fourth requirement for UCJF benefits, namely that PIP coverage, which was required under the automobile insurance statute, was "not . . . in effect." *N.J.S.A.* 39:6–86.1. Stated in the alternative, this aspect of the statute provides that UCJF benefits will not be available to one who is injured and for whom PIP benefits were in force.

In this statute, the Legislature did not more specifically define what it meant by its reference to PIP benefits; instead, it referred to "personal injury protection benefits under the 'New Jersey Automobile Reparation Reform Act,' P.L. 1972, c. 70 ( [*N.J.S.A.*] 39:6A–1 et seq.)." *See N.J.S.A.* 39:6–86.1. Although at the time of its enactment only one type of PIP coverage had been created as part of the ongoing efforts relating to automobile insurance reform, this aspect of the UCJF statute has remained unchanged since then. As a result, it refers generally to PIP benefits and it refers to the statutes governing automobile insurance as a whole. On its face, the UCJF statute makes no distinction among the different types of PIP coverage that might be selected by an automobile's owner.

For purposes of our analysis we need not include an exhaustive explanation of the statutory framework on the history of automobile insurance reform in our State. Rather, we need only note that there are three types of automobile insurance available, each providing a different level of coverage for medical expenses. A "standard policy" provides "personal injury protection coverage" up to $250,000 for all "reasonable, necessary, and appropriate"

treatment for bodily injuries. *N.J.S.A.* 39:6A–4. A "basic policy," which is available as "an alternative to the mandatory coverage[ ]" of the standard policy, affords more limited benefits. *N.J.S.A.* 39:6A–3.1. In particular, it provides "personal injury protection coverage" up to only $15,000 for all "reasonable and necessary treatment" for bodily injuries and up to $250,000 for specified treatments relating to certain permanent injuries. *Ibid.* Finally, the "special policy" provides only "emergency personal injury protection coverage" up to $250,000 for emergency treatment immediately following an automobile accident and extending until the patient is discharged from acute care. *N.J.S.A.* 39:6A–3.3(b)(1). Coverage under a special policy also continues following discharge if the medical procedures or therapies qualify as continued treatment for "permanent or significant brain injury, spinal cord injury or disfigurement." *Ibid.*

The special policy, sometimes referred to as the "Dollar–A–Day" plan, is available only to certain individuals who qualify as "eligible low income individuals" and who are also enrolled in the Federal Medicaid program. *N.J.S.A.* 39:6A–3.3(a). In establishing the special policy, the Legislature stated that it intended "to assist certain low income individuals in [New Jersey] and encourage their greater compliance in satisfying the mandatory private passenger automobile insurance requirements." *Ibid.* The special policy is the lowest cost policy; although it provides emergency PIP, a death benefit, *N.J.S.A.* 39:6A–3.3(b)(2), and the "tort option" protection, *N.J.S.A.* 39:6A–3.3(b)(3) (citing *N.J.S.A.* 39:6A–8), it "shall not provide liability, collision, comprehensive, uninsured or underinsured motorist coverage." *N.J.S.A.* 39:6A–3.3(c). As a result, for purposes of a liability claim by an individual involved in an accident with a driver covered by the special policy against that party's own insurer, it is considered to be an accident with an uninsured motorist, *see N.J.S.A.* 17:28–1.1(e)(2)(d), thereby triggering UM benefits. *See Shaw v. City of Jersey City,* 174 *N.J.* 567, 571–72, 811 *A.*2d 404 (2002).

Each type of policy provides that a passenger who is injured is entitled to recover PIP as defined by the insurance policy for that automobile. *See N.J.S.A.* 39:6A–3.1, –3.3, –4. Because each of these types of policies also provides PIP protections to passengers, the type of policy chosen by a driver affects not only that driver's benefits under the policy, but also impacts on the benefits available to any passengers in the vehicle.

### B.

The heart of the dispute before this Court is whether, when the Legislature referred to PIP benefits in the UCJF statute, it intended to include only PIP as defined in the standard and basic policies, or whether it also meant to refer to the emergency PIP afforded in the special policy. The distinction is significant because if the reference to PIP in the UCJF statute refers to all three kinds of policies, that is, standard, basic, and special, then plaintiff was in a vehicle that had PIP coverage in force. The result of that reading would be that plaintiff was in a covered vehicle, that it had PIP benefits in force, and, therefore, he is not entitled to benefits from the UCJF as well. Alternatively, if, as plaintiff argues, the Legislature intended its reference in the UCJF statute to be limited to the PIP coverage provided in the standard and basic policies, then a vehicle covered by a special policy would be the equivalent of a vehicle with no PIP coverage, thus entitling plaintiff to benefits through the UCJF.

Our review of the plain language of these statutes, together with the expressions by our Legislature about its intent in enacting each, compels us to conclude that the term "personal injury protection coverage," as used in the UCJF statute, *N.J.S.A.* 39:6–86.1, is a general term that encompasses both the "personal injury protection" benefits provided by standard and basic policies and the "emergency personal injury protection" benefits provided by special policies. We reach our conclusion for the following reasons.

First, the UCJF statute, *N.J.S.A.* 39:6–86.1, in describing "personal injury protection coverage" refers generally to the automobile insurance statute, *N.J.S.A.* "39:6A–1 *et seq.*," rather than to any specific provision within that larger statutory framework. The use of the phrase in the UCJF statute is general; it makes no reference to any particular kind of policy or any level of PIP benefits. Although it is true that there was but one kind of PIP coverage available at the time when this language was incorporated into the UCJF statute, *see L.* 1972, *c.* 70 (codified at *N.J.S.A.* 39:6A–4), that does not suggest that the Legislature intended to tie the obligations of the UCJF to that single type of benefit should other alternatives become available thereafter.

When the Legislature added the option of basic coverage, with its more modest PIP coverage, it did not amend the UCJF statute to expand the responsibility of the UCJF so as to make it responsible for, in effect, filling the gap between what a standard PIP policy would provide and that which would be afforded through a basic policy. Neither did the Legislature do so when creating the special policy, with its even more limited emergency PIP entitlement. Looking solely at the UCJF statute and solely at the fact that the Legislature has created new coverage options with varying PIP provisions but without redefining the role of the UCJF as to any of them, we cannot conclude that the Legislature intended that two of the three policies would be interpreted as providing PIP coverage but one would not.

On the contrary, all three policies provide PIP; the difference is in the level of PIP coverage that each of the policies provides. Had the Legislature intended that the reference to "personal injury protection coverage" include only the standard and basic policies, it would have amended the UCJF statute to refer to those coverages specifically rather than leaving in place the reference to PIP coverage generally, when it created the special policy.

In another statutory context, the Legislature used the phrase "personal injury protection coverage" to refer collectively to all three different types of insurance policies, implying that the

Legislature has continued to use "personal injury protection" as a general term that refers to standard, basic, or special policies. *See N.J.S.A.* 39:6A–5.1(a). Similarly, the phrase "personal injury protection" is defined in the applicable regulations to include all three types of PIP coverage, *see N.J.A.C.* 11:3–5.2, further supporting our conclusion that the term is a general one, rather than one intended to be restricted to the standard and basic policies.

▮ Our analysis is buttressed by our understanding of the Legislature's purpose in creating the UCJF. To be sure, it is remedial legislation and, although it is therefore to be broadly construed, *see Douglas v. Harris,* 35 *N.J.* 270, 279, 173 *A.*2d 1 (1961), it may not be expanded beyond the remedial purposes the Legislature clearly envisioned. We have observed that "[t]he purpose of the UCJF is to 'provide a measure of relief to persons who sustain losses inflicted by financially irresponsible or unknown owners and operators of motor vehicles, where such persons would otherwise be remediless.'" *Jimenez v. Baglieri,* 152 *N.J.* 337, 342, 704 *A.*2d 1285 (1998) (quoting *Dixon v. Gassert,* 26 *N.J.* 1, 5, 138 *A.*2d 14 (1958)); *see Giacobbe v. Gassert,* 29 *N.J.* 421, 425, 149 *A.*2d 214 (1959). At the same time, we have recognized that

> the [UCJF] was never intended to make every claimant whole or to compensate all accident victims; rather, it was intended to "offer some measure of relief to those who come within the class intended to be protected, to prevent a claimant from being forced to absorb the entire economic loss caused by the accident."
>
> [*Jimenez, supra,* 152 *N.J.* at 342–43, 704 *A.*2d 1285 (quoting *Unsatisfied Claim and Judgment Fund Bd. v. N.J. Mfrs. Ins. Co.,* 138 *N.J.* 185, 189, 649 *A.*2d 1243 (1994)).]

In considering the broader purpose of the UCJF, we have also commented that "the objective of the [L]egislature [in creating the UCJF] . . . was to protect the public from a noninsured, financially irresponsible motorist, not one who is insufficiently insured." *Gorton v. Reliance Ins. Co.,* 77 *N.J.* 563, 572, 391 *A.*2d 1219 (1978). We have recognized, as well, that the UCJF is a remedy of last resort, rather than one that will serve as a supplement to other remedies. *See Caballero v. Martinez,* 186 *N.J.* 548, 555, 897 *A.*2d 1026 (2006); *Shaw, supra,* 174 *N.J.* at 572, 811 *A.*2d 404.

Seen in this light, we find no basis on which to conclude that the Legislature intended the UCJF to create a remedy for one who is covered under a policy that affords PIP coverage that is limited or that is modest; rather, the UCJF was designed to provide benefits for one who would otherwise be left with no remedy after an automobile accident. Plaintiff's suggestion that he was remediless because he had no remedy with regard to his non-emergency medical expenses overlooks the fact that he was not remediless within the meaning of the statute; he was covered under a special insurance policy that provided him with benefits and ensured that his emergency medical treatment was covered.

The assertion that he should be considered remediless because the Legislature designated a vehicle covered by a special policy as the equivalent of an uninsured motorist for UM purposes, see N.J.S.A. 17:28–1.1(e)(2)(d), is similarly unavailing because it confuses the purposes of PIP with the different aims of liability coverage. That line of reasoning fails to appreciate that although the Legislature has chosen to create policies that will ensure payment for medical care through PIP regardless of fault, it has also elected to authorize an individual to seek UM compensation through his or her own automobile insurer. In that context, because the special policy provides no liability coverage, it must be interpreted as the equivalent of an uninsured motorist for liability purposes and for UM coverage.

Nothing in those legislative choices suggests an intention to create an additional avenue of relief for an individual covered by a special policy to seek non-emergency care through the UCJF. The Legislature's clear expression of its intent through its statutory pronouncements compels the conclusion that plaintiff received the full benefits of the special policy and is entitled to nothing more through the UCJF.

## III.

The judgment of the Appellate Division is reversed and the matter is remanded to the Law Division for the entry of an order dismissing plaintiff's complaint against NJPLIGA.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.