SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Lakita D. Murray v. Christopher B. Punina (A-51-24) (090246)**

**Argued February 2, 2026 -- Decided May 6, 2026**

**JUSTICE FASCIALE, writing for a unanimous Court.**

In this appeal, the Court considers whether evidence of plaintiff Lakita Murray's future medical expenses is admissible in her personal injury trial even though they would not exceed her personal injury protection (PIP) coverage limits.

In August 2016, plaintiff sustained injuries as a passenger in a car accident. She applied for PIP benefits from the New Jersey Property-Liability Insurance Guaranty Association (NJPLIGA) under the terms of the Unsatisfied Claim and Judgment Fund (UCJF). NJPLIGA approved the application, which entitled plaintiff to medical expense benefits up to $250,000. The cost of the medical treatment plaintiff underwent prior to trial did not exceed the limits of her PIP coverage.

Plaintiff filed a personal injury complaint against both drivers involved in the collision. Plaintiff filed an offer of judgment for $50,000, but defendant Anthony Marrone did not accept. Plaintiff's medical expert opined that plaintiff's future medical expenses would be between $42,000 and $160,000. The jury awarded plaintiff $250,000 in non-economic damages and $100,000 in damages for future medical expenses. The judgment against Marrone was for $50,000 and $20,000, respectively, plus pre-judgment interests and costs. Pursuant to the offer of judgment rule, the trial court additionally awarded plaintiff $44,107.58.

The Appellate Division reversed in part, finding that evidence of plaintiff's future medical expenses was inadmissible because those expenses were "collectible" under N.J.S.A. 39:6A-12. Because it found that the future medical expenses should have been excluded, the appellate court also modified the judgment against Marrone to exclude that part of the damages award and to exclude the additional award under the offer of judgment rule. The Court granted certification. 260 N.J. 313 (2025).

**HELD:** Future medical expense benefits that do not exceed a claimant's PIP coverage limits are "collectible" for purposes of N.J.S.A. 39:6A-12 and therefore inadmissible during a plaintiff's personal injury trial against a tortfeasor.

1

1.  N.J.S.A. 39:6A-12, a provision of the New Jersey Automobile Reparation Reform Act, commonly known as the No-Fault Act, is titled "Inadmissibility of evidence of losses collectible under personal injury protection coverage."  The provision refers to three types of PIP coverage:  a standard automobile insurance policy, a basic automobile insurance policy, and a special automobile insurance policy.  Each provides PIP protection to passengers.  The UCJF is intended to provide the kind of protection a liability insurance policy would provide so that individuals who sustain losses inflicted by uninsured drivers are not left remediless.  The term "personal injury protection coverage," as used in the UCJF statute, is a general term that encompasses the PIP benefits provided by standard, basic, and special policies, and the statute plainly states that it applies when "[PIP] benefits under the [No-Fault Act] would be payable."  N.J.S.A. 39:6-86.1.  UCJF claimants are entitled to protection equivalent to that provided by a liability insurance policy -- no more, no less.  N.J.S.A. 39:6A-12 applies to PIP benefits available from the UCJF.  (pp. 9-12)

2.  As originally enacted, the No-Fault statutory scheme provided for unlimited medical benefits under no-fault insurance.  But, "because of the rapidly escalating cost of those benefits," the Legislature subsequently "reduce[d] those benefits to a limit of $250,000."  N.J.S.A. 39:6A-1.1(b).  The statutory scheme thus "preserve[d] the no-fault system [and] reduc[ed] unnecessary costs which drive premiums higher."  Ibid.  To further that objective, N.J.S.A. 39:6A-12 bars the admissibility of evidence of losses collectible under PIP and reflects legislative awareness of the need to prevent double recovery by a plaintiff eligible for PIP benefits.  The Court reviews the history of the provision and concludes that, under the plain language of N.J.S.A. 39:6A-12 as it now reads, medical expense benefits are inadmissible in a civil trial as damages against a tortfeasor if they are "collectible or paid."  Conversely, uncompensated medical expenses that are not covered by applicable PIP limits are admissible against a liable party under N.J.S.A. 39:6A-12.  Future medical expense benefits that are covered under a PIP policy are "collectible" and thus inadmissible in a civil action under N.J.S.A. 39:6A-12.  (pp. 12-19)

3. Here, plaintiff's estimated future medical expenses will not exhaust her PIP limits and are, thus, "collectible."  Those expenses are inadmissible and should not have been presented to the jury or included in the damages award.  Further, because the inadmissible future expenses should not have been included in the award against Marrone, the award should also not have included additional costs and fees pursuant to the offer of judgment rule.  (pp. 19-20)

    **AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, NORIEGA, and HOFFMAN join in JUSTICE FASCIALE's opinion.**

Lakita D. Murray,

Plaintiff-Appellant,

v.

Christopher B. Punina,
Christoph Punina, New Jersey
Property Liability Guaranty
Association, a/k/a NJPLIGA,

Defendants,

and

Anthony Marrone, II,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| February 2, 2026 | May 6, 2026 |

Daniel N. Epstein argued the cause for appellant (Epstein Ostrove, and Hegge & Confusione, attorneys; Daniel N. Epstein and Michael Confusione, on the brief).

Stephen J. Foley, Jr., argued the cause for respondent (Campbell, Foley, Delano & Adams, attorneys; Stephen J. Foley, Jr., on the briefs).

Dominic R. DePamphilis argued the cause for amicus curiae New Jersey Association for Justice (D'Arcy Johnson Day, attorneys; Dominic R. DePamphilis and Richard J. Albuquerque, on the brief).

Robert A. Cappuzzo argued the cause for amicus curiae New Jersey Defense Association (Chasan Lamparello Mallon & Cappuzzo, attorneys; Robert A. Cappuzzo, on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

In this appeal, we determine whether evidence of plaintiff's future medical expenses is admissible in her personal injury trial when those projected expenses would not exceed her personal injury protection (PIP) coverage limits.

Under N.J.S.A. 39:6A-12, a provision of the New Jersey Automobile Reparation Reform Act, commonly known as the No-Fault Act, a plaintiff suing a defendant for personal injuries arising out of an automobile accident cannot introduce evidence of benefits that are "collectible" under PIP coverage. We hold that future medical expense benefits that do not exceed a claimant's PIP coverage limits are "collectible" and therefore inadmissible during a plaintiff's personal injury trial against a tortfeasor.

We affirm the Appellate Division's judgment.

2

## I.

In August 2016, plaintiff Lakita Murray sustained injuries in a car accident. She was a passenger in defendant Christopher Punina's car when it collided with a car driven by defendant Anthony Marrone.

Punina's car was uninsured, and plaintiff did not reside in a household where either she or a family member insured a car. Consequently, in December 2016, plaintiff applied for PIP benefits from the New Jersey Property-Liability Insurance Guaranty Association (NJPLIGA) under the terms of the Unsatisfied Claim and Judgment Fund (UCJF). NJPLIGA approved plaintiff's PIP application, which entitled her to medical expense benefits up to $250,000. The cost of the medical treatment plaintiff underwent prior to trial did not exceed the limits of her PIP coverage.

Plaintiff filed a personal injury complaint against Marrone and Punina in August 2018.[1] Punina defaulted and did not participate in the trial. Plaintiff filed an offer of judgment for $50,000 pursuant to Rule 4:58-1, which allows parties to offer to settle a civil case through a monetary judgment entered in their favor. Marrone did not accept the offer.

---

[1] Plaintiff also named NJPLIGA as a defendant because, at that point, NJPLIGA had not responded to her application for PIP benefits. NJPLIGA later awarded plaintiff PIP benefits and did not participate in the trial.

3

Prior to trial, plaintiff's medical expert, Dr. Arthur Perry, opined in a deposition that plaintiff's future medical expenses would be between $42,000 and $160,000.[2] Marrone filed a motion to redact that testimony from the deposition. Relying on N.J.S.A. 39:6A-12, Marrone argued that evidence of those expenses was inadmissible. The trial judge denied his motion.

The matter proceeded to trial on all issues. The jury viewed Dr. Perry's deposition, which included his estimated costs of plaintiff's future medical expenses. Following the two-day trial, the jury found Punina eighty percent liable and Marrone twenty percent liable for the accident. The jury awarded plaintiff $250,000 in non-economic damages and $100,000 in damages for future medical expenses. The judgment against Marrone was for $50,000 and $20,000, respectively. The trial court entered judgment against Marrone for $76,736.21, representing the net damages award and pre-judgment interests and costs. Pursuant to the offer of judgment rule, the trial court additionally awarded plaintiff $44,107.58.[3]

---

[2] The medical expenses were characterized as "future medical expenses" because plaintiff elected not to have the medical treatment identified by the expert between the time it was recommended and the time the case was tried. Plaintiff testified that she wants to have the recommended surgeries but has not yet undergone them.

[3] When an offer of judgment made by a claimant pursuant to Rule 4:58-1 is not accepted, and the claimant obtains a judgment that is 120% of the offer or more, the claimant is also entitled to recover certain costs and fees. R. 4:58-2.

Marrone subsequently moved for judgment notwithstanding the verdict (JNOV), renewing his contention that plaintiff's future medical expenses were inadmissible. In support of his motion, he relied on the undisputed facts that (1) plaintiff was eligible for $250,000 in PIP benefits; (2) those benefits had not been exhausted as of the time of trial; and (3) the projected future medical expenses would not exhaust the remainder of the PIP benefits available to plaintiff. The trial judge denied the JNOV motion.

Marrone appealed to the Appellate Division. The appellate court reversed the trial court in part, finding that evidence of plaintiff's future medical expenses was inadmissible because those expenses were "collectible" under N.J.S.A. 39:6A-12. Because it found that the future medical expenses should have been excluded, the appellate court also modified the judgment against Marrone to exclude that part of the damages award and to exclude the additional award under the offer of judgment rule. Reading the UCJF statute together with the No-Fault Act, the Appellate Division determined that N.J.S.A. 39:6A-12's inadmissibility provision applies to the UCJF.

We granted plaintiff's petition for certification. 260 N.J. 313 (2025). We also granted motions to appear as amicus curiae filed by the New Jersey

---

Here, with the inclusion of plaintiff's future medical expenses, the judgment against Marrone was over the 120% threshold.

Association for Justice (NJAJ) and the New Jersey Defense Association (NJDA).

II.

Plaintiff argues that evidence of her future medical expenses is admissible in her personal injury trial, notwithstanding that the projected cost of her future medical expenses falls within her remaining PIP limits. She contends that N.J.S.A. 39:6A-12 does not apply to her case because her PIP benefits are payable through the UCJF, and the UCJF is not "considered any of the automobile insurance policies outlined in [N.J.S.A. 39:6A-12]." Even if the statute does apply, plaintiff asserts, her future medical expenses are admissible because they are neither "collectible" nor "paid" as they have not yet been incurred, and the only requirement for recovery is that the medical expenses remain unpaid.

Marrone argues that N.J.S.A. 39:6A-12 renders evidence of plaintiff's future medical expenses inadmissible. He reiterates that those future medical expenses would not exceed her remaining PIP limits. Therefore, under N.J.S.A. 39:6A-12, those expenses are "collectible" and not recoverable as damages in the personal injury trial. Marrone further argues that N.J.S.A. 39:6A-12 applies to PIP benefits under the UCJF.

6

NJAJ asserts that a decision barring the admission of evidence of future medical expenses in the trial against a tortfeasor would contravene public policy against piecemeal litigation and would force individual plaintiffs to bear the costs of those future expenses in light of the statute of limitations (SOL) governing PIP actions.

NJDA contends that plaintiffs will not be prejudiced if evidence of future medical expenses is barred because the PIP arbitration process permits and is well-suited to address claims for future medical treatment. NJDA emphasizes that Forthright Rules 7 and 34 provide arbitration and emergent hearing options, respectively, that exist "exclusively" for addressing future medical expenses when PIP coverage is not exhausted.[4] And as for SOL concerns, NJDA asserts an injured plaintiff's rights would be protected under the "future treatment exception" to the PIP SOL.

III.

A.

We review questions of statutory interpretation de novo. Wiggins v. Hackensack Meridian Health, 259 N.J. 562, 574 (2025). To do so, "we look to

---

[4] Forthright is the administrator of all New Jersey PIP arbitration claims. Those claims are governed by Forthright's New Jersey No-Fault PIP Arbitration Rules, as approved by New Jersey's Department of Banking and Insurance.

the Legislature's intent as expressed in the statute's plain terms." Ibid. "We ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citations omitted); see also N.J.S.A. 1:1-1 (stating that statutory "words and phrases shall be read . . . [in] context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language").

"If the plain language of a statute is clear, our task is complete." Savage v. Township of Neptune, 257 N.J. 204, 215 (2024). However, "if there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" DiProspero, 183 N.J. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

B.

We first consider whether N.J.S.A. 39:6A-12 applies to PIP benefits available through the UCJF. Plaintiff argues that N.J.S.A. 39:6A-12 does not apply to her case because PIP coverage through the UCJF is not expressly

8

mentioned in the text of that statute. That argument is belied by both the plain text and the purpose of the UCJF and the No-Fault Act.

N.J.S.A. 39:6A-12 is titled "Inadmissibility of evidence of losses collectible under personal injury protection coverage." The provision specifically refers to three types of PIP coverage: a standard automobile insurance policy, a basic automobile insurance policy, and a special automobile insurance policy. See Sanders v. Langemeier, 199 N.J. 366, 375-76 (2009) (describing the differences among those policy types). Each of those policies provides PIP protection to passengers. Ibid.

The UCJF is intended "to provide the kind of protection a liability insurance policy would provide" so that individuals who sustain losses inflicted by uninsured drivers are not left remediless. Jimenez v. Baglieri, 152 N.J. 337, 342 (1998) (quoting Unsatisfied Claim & Judgment Fund Bd. v. N.J. Mfrs. Ins. Co., 138 N.J. 185, 189 (1994)). The Fund accordingly provides for recovery of PIP benefits. Caballero v. Martinez, 186 N.J. 548, 555 (2006). When qualified individuals, like plaintiff here, suffer "bodily injury . . . caused by a motor vehicle . . . for which [PIP] benefits under the [No-Fault Act] would be payable[,] . . . the [UCJF] shall provide . . . [p]ayment of all medical expense benefits . . . in an amount not exceeding $250,000 per person per accident." N.J.S.A. 39:6-86.1(a).

We have held that the plain language of the UCJF statute and the No-Fault Act "compels us to conclude that the term 'personal injury protection coverage,' as used in the UCJF statute, N.J.S.A. 39:6-86.1, is a general term that encompasses . . . the 'personal injury protection' benefits provided by standard[,] . . . basic[,] . . . [and] special policies." Sanders, 199 N.J. at 377. We see no reason to depart from that conclusion here.

The same statutory language underlying our conclusion in Sanders informs our conclusion here. The UCJF statute plainly states that it applies when "[PIP] benefits under the [No-Fault Act] would be payable." N.J.S.A. 39:6-86.1. It refers "generally to PIP benefits" and, in describing those benefits, "refers generally to the [No-Fault Act] rather than to any specific provision within that larger statutory framework." Sanders, 199 N.J. at 375, 378. The use of the term "personal injury protection" throughout the No-Fault Act similarly reflects that the Legislature uses the phrase "as a general term." Id. at 379; see also Unsatisfied Claim & Judgment Fund Bd., 138 N.J. at 189 ("In virtually all respects, the PIP provisions in the [UCJF Law] track those in the No-Fault Law.").

The legislative history of the UCJF statute and the No-Fault Act further supports that the Legislature intended for "PIP" to have the same meaning in both statutes. See Craig & Pomeroy, N.J. Auto Insurance Law § 30:2-5 (2023)

10

(noting that the UCJF was adopted to provide "parallel personal injury protection" and that "each time . . . PIP provisions have been amended in [the No-Fault Act], conforming amendments have been made to the[] UCJF PIP rules"); see also Sanders, 199 N.J. at 378 ("Had the Legislature intended that the reference to '[PIP] coverage' include only the standard and basic policies, it would have amended the UCJF statute to refer to those coverages specifically rather than leaving in place the reference to PIP coverage generally."). In accordance with our longstanding jurisprudence interpreting these two statutes in harmony, we cannot conclude that the Legislature intended different evidentiary standards to apply to PIP benefits under the UCJF than under the No-Fault Act.

Interpreting those statutes in harmony is particularly warranted here because different interpretations would result in different remedies for those covered by UCJF PIP benefits and those covered by No-Fault PIP benefits. If N.J.S.A. 39:6A-12 did not apply to UCJF PIP benefits, UCJF claimants would be entitled to greater recovery: they could recover both from PIP and from the tortfeasor, whereas those covered by No-Fault PIP benefits could recover only from PIP. But as noted above, in enacting the UCJF, the Legislature "created the Fund 'to provide the kind of protection a liability insurance policy would provide,'" clearly intending to "offer some measure of relief" to those who

11

would otherwise be left remediless.  <u>Jimenez</u>, 152 N.J. at 342-43 (emphases added) (quoting <u>Unsatisfied Claim & Judgment Fund Bd.</u>, 138 N.J. at 189).  It would be inconsistent with that purpose for UCJF claimants to receive <u>double</u> recovery, thereby granting them compensation greater than the kind available to those with No-Fault insurance.

UCJF claimants are entitled to protection equivalent to that provided by a liability insurance policy -- no more, no less.  N.J.S.A. 39:6A-12 thus applies to PIP benefits available pursuant to the UCJF.

C.

We next consider whether medical expenses that do not exceed the limits of applicable PIP coverage are admissible in a civil action.

1.

New Jersey law prescribes a no-fault system for payment of medical expenses incurred by injuries sustained in automobile accidents.  <u>See</u> N.J.S.A. 39:6A-1 to -35.  Enacted in 1972 based on the recommendations of the Automobile Insurance Study Commission, the No-Fault statutory scheme had the primary goals of providing automobile accident victims prompt compensation for their economic losses regardless of fault and reducing reliance on the Judiciary, all while keeping insurance costs manageable.  <u>See</u> Auto. Ins. Study Comm'n, <u>Reparation Reform for New Jersey Motorists</u> 7

12

(Dec. 1971); see also Gambino v. Royal Globe Ins. Cos., 86 N.J. 100, 105-07 (1981).

As originally enacted, the No-Fault statutory scheme provided for unlimited medical benefits under no-fault insurance. See L. 1972, c. 70. But, because of the "rapidly escalating cost of those benefits," the Legislature subsequently "reduc[d] those benefits to a limit of $250,000." N.J.S.A. 39:6A-1.1(b). The Legislature has explained that "[t]he principle underlying the philosophical basis of the no-fault system is that of a trade-off of one benefit for another; in this case, providing medical benefits in return for a limitation on the right to sue for non-serious injuries." Ibid.

The statutory scheme thus "preserve[d] the no-fault system [and] reduc[ed] unnecessary costs which drive premiums higher." Ibid. To further that objective, N.J.S.A. 39:6A-12 bars the admissibility of evidence of losses collectible under PIP and "reflects legislative awareness of the need" to "prevent double recovery by a plaintiff eligible for PIP benefits." Adams v. Cooper Hosp., 295 N.J. Super. 5, 11-12 (App. Div. 1996).

In Haines v. Taft, this Court was called upon to review orders that prohibited the plaintiffs from admitting into evidence medical expenses that exceeded the limits of their $15,000 PIP policies. 237 N.J. 271, 274 (2019). At that time, N.J.S.A. 39:6A-12 read as follows:

13

> Except as may be required in an action brought pursuant to [N.J.S.A. 39:6A-9.1], <u>evidence of the amounts collectible or paid</u> under a standard . . . [,] . . . a basic . . . [, or] a special automobile insurance policy . . . <u>is inadmissible in a civil action for recovery of damages for bodily injury by such injured person</u>.
>
> The court shall instruct the jury that, in arriving at a verdict as to the amount of the damages for noneconomic loss to be recovered by the injured person, the jury shall not speculate as to the amount of the medical expense benefits paid or payable by an automobile insurer under personal injury protection coverage payable under a standard[,] . . . a basic[,] . . . or . . . a special automobile insurance policy . . . , nor shall they speculate as to the amount of benefits paid or payable by a health insurer, health maintenance organization or governmental agency . . . .
>
> Nothing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss sustained by the injured party.
>
> [N.J.S.A. 39:6A-12 (2018) (emphases added).]

We upheld the orders based on that statutory language and the legislative history of the No-Fault Act, <u>Haines</u>, 237 N.J. at 292-94, but we invited the Legislature to provide "greater clarity" and "make its intention to introduce fault-based suits into the no-fault medical reimbursement scheme more explicit," <u>id.</u> at 295.

14

In response, the Legislature overturned Haines and amended N.J.S.A. 39:6A-12.[5] In the amended version, the language in the first two paragraphs remains, but the third paragraph was changed to read:

> Nothing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss as defined by [N.J.S.A. 39:6A-2], including all uncompensated medical expenses not covered by the personal injury protection limits applicable to the injured party and sustained by the injured party. All medical expenses that exceed, or are unpaid or uncovered by any injured party's medical expense benefits personal injury protection limits, regardless of any health insurance coverage, are claimable by any injured party as against all liable parties.
>
> [(emphases added).]

The current statute thus retains the prohibition against admitting evidence of "amounts collectible or paid" under an applicable insurance policy, but it expressly distinguishes from those "amounts" "all uncompensated medical expenses" that exceed or are uncovered by the PIP limits.

---

[5] Governor Philip D. Murphy signed into law L. 2019, cc. 244 and 245, which amended N.J.S.A. 39:6A-12, on August 15, 2019. Governor's Statement Upon Signing S. 2432 and S. 3963 (Aug. 15, 2019). L. 2019, c. 244 provides that the act "shall take effect immediately and apply to causes of action pending on that date or filed on or after that date." L. 2019, c. 244 applies here because plaintiff's case was pending on the effective date.

15

Although the phrase "amounts collectible or paid" is undefined by statute, our courts have understood it to mean those which are "legally due" for payment as PIP benefits.  See, e.g., Amaru v. Stratton, 209 N.J. Super. 1, 9 (App. Div. 1985); Tullis v. Teial, 182 N.J. Super. 553, 558 (App. Div. 1982); Mokienko v. Greenan, 178 N.J. Super. 657, 660 (Law Div. 1981) (quoting Wagner v. Transam. Ins. Co., 167 N.J. Super. 25, 33 (App. Div. 1979)).  The terms "uncompensated," "exceed," and "uncovered" are similarly not defined, but their meaning is also significant to understanding the legislation as a whole.  As ordinarily understood, "uncompensated" means to not be compensated; to compensate is defined as "counterbalancing payment to the victims for their loss."  Merriam-Webster's Collegiate Dictionary, 253 (11th ed. 2020).  "Exceed" is defined as "to be greater than" or "to go beyond a limit set."  Id. at 434.  Lastly, "uncovered" relates to not being covered by insurance, with "coverage" defined as "inclusion within the scope of an insurance policy or protective plan."  Id. at 288.

2.

As the plain text and legislative history of N.J.S.A. 39:6A-12 confirm, the Legislature clearly intended to distinguish between medical expenses that are payable by applicable PIP benefits and those that are not.  Under the plain language of N.J.S.A. 39:6A-12, medical expense benefits are inadmissible in a

16

civil trial as damages against a tortfeasor if they are "collectible or paid." Conversely, uncompensated medical expenses that are not covered by applicable PIP limits are admissible against a liable party under N.J.S.A. 39:6A-12. These amounts are neither "collectible" (as they are uncovered and not legally due), nor "paid" (as they are uncompensated). In contrast, medical expenses that are covered by applicable PIP limits are "collectible" because they are eligible to be paid when incurred. Notably, medical expense benefits may be "unpaid" but still "collectible" -- for example, projected medical expenses that have not yet been incurred are not "paid" but remain eligible for payment.

Legislative history further supports our reading of N.J.S.A. 39:6A-12. Upon signing the 2019 amendments, L. 2019, cc. 244 and 245, into law, Governor Murphy stated that the bills permit "a party injured in an automobile accident to recover, as part of the recovery of uncompensated economic loss, unreimbursed medical expenses that exceed the party's . . . [PIP] limits." See Governor's Statement Upon Signing S. 2432 and S. 3963 (Aug. 15, 2019) (emphases added). The Governor explained that the bills were intended to overturn this Court's decision in Haines and "ensure that low-income drivers, who must settle for lesser PIP coverage options because they cannot afford

17

better coverage, will not be denied the ability to recover their unreimbursed medical expenses from those who caused their injuries." Ibid.

When L. 2019, c. 244 was first introduced, the language allowed an injured party to recover only "uncompensated medical expenses between the personal injury protection limits applicable to the injured party and $250,000." S. 2432 (2018) (emphasis added). The Legislature later revised that provision to include all medical expenses that exceed any injured party's PIP limits. See Craig & Pomeroy, § 16:2-4 ("New Jersey insureds . . . may now seek recovery of unreimbursed medical expenses that exceed their PIP coverage, whether that amount is the default $250,000 standard policy coverage or one of the lesser amounts permitted under the [No-Fault Act]."). The revision expanded the ability of injured parties to recover medical expenses and, importantly, did not alter or amend the statutory provisions designating evidence of "amounts collectible [by PIP] inadmissible." L. 2019, c. 244.

Plaintiff's submission that future medical expenses payable under an injured party's applicable PIP benefits are "unpaid" and not "collectible" runs afoul of the No-Fault Act and the UCJF statute. N.J.S.A. 39:6A-12 is "part of an overall legislative design to curtail litigation in the area of automobile personal injury claims," Adams, 295 N.J. Super. at 12, and its "principal goal . . . is to avoid double recovery for a loss," Bardis v. First Trenton Ins. Co.,

18

199 N.J. 265, 279 (2009). If we were to categorize the future expenses as "unpaid," plaintiffs could enhance their personal injury damage awards by deferring treatment until after trial. Instead of the Fund incurring those expenses -- which it was designed to do -- defendants would face greater exposure. Such a conclusion would defeat the statutory scheme's purpose of "prohibit[ing] an injured person from seeking to recover from a tortfeasor medical expenses [payable] under PIP coverage from the injured person's own automobile insurer." Lambert v. Travelers Indem. Co. of Am., 447 N.J. Super. 61, 71-72 (App. Div. 2016). Permitting plaintiffs to evade the statutory restrictions would encourage inefficient outcomes and perpetuate the double-dipping that the UCJF statute and the No-Fault Act seek to eliminate.

Accordingly, future medical expense benefits that are covered under a PIP policy are "collectible" and thus inadmissible in a civil action under N.J.S.A. 39:6A-12.

3.

Applying N.J.S.A. 39:6A-12 to the present matter, plaintiff's future medical expenses are not admissible. It is undisputed that plaintiff has not exhausted her PIP benefits and that her future medical expenses will not exceed her available PIP benefits. Contrary to plaintiff's assertion, her future medical expenses are not "unpaid" because those debts or claims do not

19

presently exist -- plaintiff has not undergone the surgeries and treatments for her injuries. Rather, such expenses are collectible because they will be legally due as PIP benefits when she undergoes the surgeries recommended by Dr. Perry. Because the entirety of plaintiff's estimated future medical expenses will not exhaust her PIP limits and are, thus, "collectible," those expenses are inadmissible and should not have been presented to the jury in her personal injury trial or included in the damages award.

Further, because the inadmissible future expenses should not have been included in the award against Marrone, the award should also not have included additional costs and fees pursuant to the offer of judgment rule.

4.

The SOL concerns invoked by NJAJ here are unfounded because the applicable SOL contemplates PIP claims for future medical expenses. Generally, PIP claims must be commenced within two years. N.J.S.A. 39:6A-13.1. That SOL, however, can be extended:

> [W]hen a carrier has made PIP payments in connection with a compensable injury and is chargeable with knowledge at the time of its last payment that <u>the injury will probably require future treatment</u>, then the "two-year after payment" provision of N.J.S.A. 39:6A-13.1 <u>will not bar an action brought within a reasonable time after rejection of a prompt claim for payment of additional medical expenses for such treatment</u>.

20

[Zupo v. CNA Ins. Co., 193 N.J. Super. 374, 384 (App. Div.) (emphases added), aff'd, 98 N.J. 30 (1984).]

See also Rahnefeld v. Sec. Ins. Co. of Hartford, 115 N.J. 628, 636 (1989) (explaining that the PIP SOL will not bar claims when "[t]he injuries [are] of such a nature that future treatment [is] contemplated and reasonably necessary" (first alteration in original) (emphasis removed) (quoting Lind v. Ins. Co. of N. Am., 174 N.J. Super. 363, 369 (Law Div. 1980), aff'd o.b., 193 N.J. Super. 303 (App. Div. 1983))). Accordingly, when future medical treatment is reasonably expected, PIP claims for that future treatment are not strictly subject to a time-limited SOL and need only be brought within a reasonable time.

## IV.

The undisputed evidence demonstrates that plaintiff's projected future medical expenses fall within her PIP limits and are therefore "collectible" under N.J.S.A. 39:6A-12. The Appellate Division correctly determined that evidence of plaintiff's future medical expenses was inadmissible in the personal injury trial and directed the trial court to modify the judgment accordingly.

The judgment of the Appellate Division is affirmed.

21

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, NORIEGA, and HOFFMAN join in JUSTICE FASCIALE's opinion.